In re Robert H. HOPKINS, Jr., Debtor.

Robert H. HOPKINS, Jr., Plaintiff,

v.

UNITED STATES of America
(INTERNAL REVENUE
SERVICE), Defendant.

Bankruptcy No. 389–37580 RCM–7.
Adv. No. 390–3592.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

July 24, 1991.

Louise P. Hytken, Dept. of Justice, Tax Div., Dallas, Tex., for IRS.

Robert L. Yeager, III, Dallas, Tex., for debtor.

## AMENDED MEMORANDUM OPINION

ROBERT McGUIRE, Chief Judge.

This matter came before the Court on cross motions for summary judgment filed on behalf of Robert H. Hopkins, Jr. ("Plaintiff") and United States of America (Internal Revenue Service) ("IRS" or "Defendant"). On August 22, 1990, Plaintiff filed a complaint to determine the dischargeability of certain income tax penalties and interest asserted in a June 4, 1990, IRS statutory notice of deficiency (the "Notice of Deficiency"). The questions posed in the complaint are whether income tax penalties and interest are dischargeable where the underlying income tax deficiency, for which they were assessed, has been eliminated by the carry-back of net operating losses from subsequent tax years. Believing that no issue of material fact remains, both Plaintiff and Defendant waived argument and submitted the matter on briefs and stipulated facts. After review of the pleadings, briefs, and case law, the Court enters the following as its Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rules 7052 and 7056.

### Facts

Plaintiff and his wife, Joanne S. Hopkins ("Mrs. Hopkins"),[1] filed voluntary petitions under Chapter 7 of the Bankruptcy Code on November 27 and December 1, 1989, respectively. Plaintiff and Mrs. Hopkins were cash basis taxpayers who filed their U.S. Individual Income Tax Returns on a calendar year basis. They timely filed their Form 1040 for the taxable year 1982 on October 15, 1983, pursuant to timely executed and approved applications for extensions of time within which to file.[2]

Plaintiff's Form 1040 for taxable year 1982, as filed, reflected gross income of $403,488.01, which was derived by adding to wages, interest income and dividends the net income reported on Schedule E, attached to Plaintiff's Form 1040. The Schedule E attached to Plaintiff's Form 1040 for taxable year 1982 reflected losses attributable to two partnerships, both of which Defendant contends are abusive tax shelters, as follows:

---

1. Mrs. Hopkins is not a party to this adversary proceeding. Prior to the receipt of the Notice of Deficiency, she received her discharge and her bankruptcy case was closed.

2. Absent an agreement to the contrary, the statute of limitations as to taxable year 1982 would have expired on October 15, 1986; however, Plaintiff and Mrs. Hopkins entered into agreements with IRS extending the time to assess the tax as to taxable year 1982, as follows: a) Form 872, Consent to Extend the Time to Assess Tax, dated September 22, 1986, extending the time until December 31, 1987; b) Form 872 dated February 10, 1987, extending the time until December 31, 1988; and c) Form 872-A, Special Consent to Extend the Time to Assess Tax, dated July 25, 1988, extending the time indefinitely.

| | |
|---|---|
| Nusearch Development | $ 495,525.66 |
| Mopac Development | $ 541,690.12 |
| | |
| NET LOSS | $1,037,215.78 |

Also on the Schedule E attached to the Form 1040 for taxable year 1982, Plaintiff reported income from National Mortgage Corporation of America ("National"), a small business corporation, in the amount of $1,398,737.30. These losses attributable to Nusearch Development and Mopac Development in the total amount of $1,037,215.78 were offset against the $1,398,737.30 income received from National, for a net taxable income to be reported on Schedule E of $342,610.84. After taking into account other adjustments, deductions, and credits not in controversy herein, Plaintiff reported for taxable year 1982 taxable income in the amount of $246,384.53.

Plaintiff and Mrs. Hopkins timely filed their Form 1040 for the taxable year 1983 on April 15, 1984.[3] Plaintiff's Form 1040 for taxable year 1983, as filed, reflected a negative gross income of <$991,775.29>, which derived by adding to wages, interest income and dividends the net loss reported on Schedule E, attached to Plaintiff's Form 1040. The Schedule E attached to Plaintiff's Form 1040 for taxable year 1983 reflected losses attributable to the same two partnerships, as follows:

| | |
|---|---|
| Nusearch Development | $25,976.03 |
| Mopac Development | $22,574.55 |
| | |
| NET LOSS | $48,550.58 |

The Schedule E attached to Plaintiff's Form 1040 for taxable year 1983 also reflected losses attributable to National in the amount of $1,304,213.48. The total losses reported on the Schedule E attached to Plaintiff's Form 1040 for taxable year 1983 totaled $1,359,409.59. After taking into account other adjustments, deductions

and credits not in controversy herein, Plaintiff reported for taxable year 1983 negative taxable income of <$1,087,174.17>.

As a result of the negative taxable income and losses in the amount of <$1,359,509.59> reported on Plaintiff's Form 1040 for taxable year 1983, Plaintiff filed, on October 18, 1985, the Form 1040X, Amended U.S. Individual Income Tax Return. By filing Form 1040X, Plaintiff carried back $1,087,574 as a loss allegedly incurred in 1983, which amount exceeded the loss reported on Plaintiff's Form 1040 for taxable year 1983, to taxable year 1982, for a refund from Defendant in the amount of $104,228. On December 2, 1985, Defendant issued to Plaintiff a refund in tax for the taxable year 1982, based on Plaintiff's Form 1040X, in the amount of $104,228.

Subsequent to the issuance of the tax refund for taxable year 1982, Defendant began an examination of Plaintiff's 1982 and 1983 Forms 1040, primarily due to Plaintiff's involvement in Nusearch Development and Mopac Development, which were determined by Defendant to be abusive tax shelters. In auditing Plaintiff's 1982 Form 1040, Defendant disallowed Plaintiff's claimed losses attributable to Nusearch Development and Mopac Development, in the total amount of $1,037,216. When added to the taxable income as shown on Plaintiff's Form 1040 for the taxable year 1982, Plaintiff's correct taxable income was $1,283,601.

The increase in taxable income for taxable year 1982 resulted in a deficiency in income tax due from Plaintiff for the taxable year 1982, in the amount of $518,610. The examining agent of Defendant determined that, based upon the $518,610 deficiency in income tax due from Plaintiff, the I.R.C. § 6621(c) penalty attributed to tax-motivated transactions, and the I.R.C. § 6661 penalty in the amount of $129,653, attributable to a substantial understatement of the tax, should apply.

3. Absent an agreement to the contrary, the statute of limitations as to taxable year 1983 would have expired on April 15, 1987; however, Plaintiff and Mrs. Hopkins entered into agreements with Defendant extending the time to assess the tax as to taxable year 1983, as follows: a) Form 872 dated February 10, 1987, extending the time until December 31, 1988; and b) Form 872–A dated July 25, 1988, extending the time indefinitely.

During the process of the examination of Plaintiff's 1982 Form 1040, Plaintiff provided Defendant with a copy of his Form 1040 for taxable year 1983. In reviewing the Form 1040 for taxable year 1983, the IRS agent noticed that Plaintiff had claimed losses attributable to Nusearch Development and Mopac Development in the total amount of $48,550.58. The IRS agent disallowed the deductions taken by Plaintiff on the Form 1040 for taxable year 1983, which were attributable to Nusearch Development and Mopac Development, in the total amount of $48,550.58. The disallowance of the Nusearch Development and Mopac Development losses resulted in an adjustment to income in the amount of $48,550.58; however, when added to the large amount of negative taxable income, no positive taxable income or deficiency in tax as to the 1983 taxable year resulted. The effect of the adjustment to income as a result of this disallowance was to reduce the Schedule E loss to be shown on Plaintiff's Form 1040 for the taxable year 1983 to $1,010,768.

The disallowance of the losses also resulted in a reduction in Plaintiff's negative taxable income for the taxable year 1983, from <$1,087,174.17> to <$1,038,623>, and a maximum net operating loss that could be carried back to the 1982 taxable year in the amount of $1,010,768. This $1,010,768 loss, from taxable year 1983, was carried back to taxable year 1982 only, as taxable years 1980 and 1981 were negative taxable income years. Once carried back to the 1982 taxable year, the loss partially absorbed the $518,610 deficiency in income tax due by Plaintiff for the taxable year 1982.

In the process of examining the 1982 and 1983 Forms 1040 and the Form 1040X for 1982, the IRS agent utilized the 1983 loss amount reported by Plaintiff on his 1982 Form 1040X, which amount was erroneously entered as $1,087,574, and upon which figure, Plaintiff received a refund, and subtracted from this amount the revised net operating loss incurred in 1983 in the amount of $1,010,768, for a net adjustment to income of $76,806. This net adjustment to income, when added to the adjustments

to income due to the disallowed deduction attributable to the Nusearch Development and Mopac Development tax shelter losses for taxable year 1982 in the amounts of $495,525.66 and $541,690.12, respectively, resulted in a total adjustment to taxable income in the amount of $1,114,020.78. The IRS agent added to the $1,114,020.78 adjustment to taxable income the negative taxable income reported by Plaintiff on his Form 1040X, which amount was <$841,189>, for a positive taxable income of $272,831.78.

The IRS agent utilized the applicable tax schedule to determine the correct amount of tax due on taxable income of $272,831.78, which tax was $104,188, and subtracted from this amount the amount of tax shown by Plaintiff on the Form 1040X, which amount was $2,318, for a deficiency in tax for the taxable year 1982, after utilizing the net operating loss carry back from 1983, in the amount of $101,870. After determining the deficiency in tax for taxable year 1982, the I.R.C. § 6661 substantial understatement penalty and the I.R.C. § 6621(c) tax motivated transaction penalty would be computed based upon the resulting deficiency of $101,870.

Plaintiff and Mrs. Hopkins filed their Form 1040 for the taxable year 1984 on October 18, 1985, which Form 1040 was considered by Defendant to be timely-filed pursuant to timely-executed and approved applications for extension of time within which to file. For taxable year 1984, Plaintiff reported on the Schedule E attached to the Form 1040 a net loss of $7,593,283. When carried back to the 1982 taxable year, only $429,936 of the 1984 net operating loss needed to be utilized to fully eliminate the $101,870 deficiency in income tax for the taxable year 1982, which amount remained after utilization of the net operating loss carry back from the 1983 taxable year. Although the $518,610 deficiency in income tax determined by Defendant to be due by Plaintiff was subsequently eliminated by utilization of net operating losses carried back from taxable years 1983 and 1984, the resulting I.R.C. § 6661 substantial understatement and I.R.C. § 6621(c)

tax-motivated transaction penalties were not.

On June 4, 1990, during the pendency of Plaintiff's Chapter 7 bankruptcy case, Defendant mailed, by certified mail, a statutory notice of deficiency to Plaintiff and Mrs. Hopkins at their last known address. In the Notice of Deficiency, Defendant asserts additional amounts due from Plaintiff for taxable year 1982 in the amount of $129,653 under the provisions of I.R.C. § 6661, and an amount to be determined by Defendant under the applicable provisions of I.R.C. § 6621(c). This amount has since been calculated to be $175,572.32.[4]

Defendant did not file a proof of claim in Plaintiff's Chapter 7 bankruptcy case, as the case was filed as a no asset Chapter 7, nor has Plaintiff filed a petition with the United States Tax Court concerning the issuance of the Notice of Deficiency, and Defendant's determination as to additions to the tax due from Plaintiff for the taxable year 1982.

On August 22, 1990, Plaintiff filed this adversary proceeding to determine the dischargeability of these tax obligations. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b)(1). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). This Court finds venue is proper pursuant to 28 U.S.C. § 1409(a).

### Discussion

■ Both parties have requested summary judgment on Plaintiff's complaint pursuant to Rule 56(c) Federal Rules of Civil Procedure and Bankruptcy Rule 7056. Under Rule 56(c), Fed.R.Civ.P., summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex v. Catrett*, 477

U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The parties have submitted this matter on stipulated facts; thus, its resolution lies solely upon legal issues and is ripe for determination.

This matter presents two major issues. The first issue is the dischargeability of tax penalties assessed pursuant to I.R.C. § 6661 under 11 U.S.C. § 523(a)(7). The dispute centers on the relationship of subsections (A) and (B) of § 523(a)(7). It is the Plaintiff's position that the statutory language is unambiguous and must be read as excepting from nondischargeability tax penalties imposed due to a transaction or event that occurred more than three years before the bankruptcy filing regardless of whether the penalty relates to a tax which is nondischargeable pursuant to § 523(a)(1). In support of this argument Plaintiff relies on three cases, *In re Burns*, 887 F.2d 1541 (11th Cir.1989), *In re Roberts*, 906 F.2d 1440 (10th Cir.) and *In re Frary*, 117 B.R. 541 (Bankr.D.Alaska 1990).[5]

Defendant argues that under § 523(a)(7)(A) a tax penalty that relates to a tax that is nondischargeable is likewise nondischargeable regardless of whether the penalty meets the express terms of § 523(a)(7)(B). Defendant asserts that, if the underlying tax deficiency had not been eliminated by net operating losses from subsequent years, the deficiency would have been nondischargeable under § 523(a)(1)(A) and § 507(a)(7)(A)(iii). This approach, however, presents a more fundamental question—whether § 523(a)(7)(A) is applicable where there is no underlying tax obligation for which Plaintiff is liable. However, because of the Court's resolution of the dischargeability question, the Court need not address this issue.

The second issue presented for the Court's determination is the treatment of the I.R.C. § 6621(c) interest penalty assessed by Defendant. This will be addressed more fully in Part B herein.

---

4. Attached to Defendant's motion for summary judgment is the affidavit of Dan Harvey, a revenue agent for IRS, that places the amount of interest owed, under § 6621(c), at $175,572.32.

5. Also advancing this position are *In re Roberts*, 125 B.R. 534 (Bankr.C.D.Ill.1991) and *Matter of Stoll*, 132 B.R. 782 (Bankr.N.D.Ga.1990).

### A. Are These Tax Penalties Dischargeable Under § 523(a)(7)(B)?

Section 727(a) of the Bankruptcy Code grants an individual the general right of discharge and sets forth those instances where such right will be denied. Section 727(b) excepts from discharge those individual debts that fall within the exceptions set forth in § 523. It is universally accepted that exceptions to discharge are narrowly construed against the creditor and in favor of the debtor. *Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915); *Matter of Cross*, 666 F.2d 873 (5th Cir.1982); *In re Black*, 787 F.2d 503 (10th Cir.1986); *In re Belfry*, 862 F.2d 661 (8th Cir.1988); *In re Hunter*, 780 F.2d 1577 (11th Cir. 1986); *In re Houtman*, 568 F.2d 651 (9th Cir.1978).

As in all disputes over statutory wording our inquiry must begin with the language of the statute, for where that language is plain and unambiguous, the statute must be enforced according to its terms. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); *West Virginia University Hosp. v. Casey*, —— U.S. ——, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991). The statute here in dispute is § 523(a)(7). That section in relevant part reads;

> (a) A discharge under section 727 ... of this title does not discharge an individual from any debt—
>
> (7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty—
>
> (A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or
>
> (B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition.

Defendant argues that the language of § 523(a)(7) is ambiguous and asks this Court to look to the statute's legislative history in order to give effect to Congress' intent. However, where "the statutory scheme is coherent and consistent, there generally is no need to inquire beyond the plain language of the statute." *Ron Pair*, 489 U.S. at 240–41, 109 S.Ct. at 1030. For this Court to look to the legislative history would require a finding that there is an ambiguity in the statute.

In support of their position, Defendant relies on *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), wherein the Supreme Court, found the introductory language of § 523(a)(7) subject to interpretation, and a line of cases that have adopted the position that Defendant advances here. *Cassidy v. Commissioner*, 814 F.2d 477 (7th Cir.1987); *In re Carlton*, 19 B.R. 73 (D.N.M.1982); *In re Harris*, 59 B.R. 545 (Bankr.W.D.Va.1986); *In re Gerulis*, 56 B.R. 283 (Bankr.D.Minn.1985); *In re Ferrara*, 103 B.R. 870 (Bankr.N.D.Ohio 1989); *Matter of Longley*, 66 B.R. 237 (Bankr.N.D.Ohio 1986).[6]

In *Kelly*, the Supreme Court examined the language of § 523(a)(7) pertaining to fines, penalties and forfeitures. The question considered by the Court was whether state court restitution orders qualified within that language of the statute. Because of the ambiguous nature of the statute, the Court found it necessary to look to its legislative history. The Court's analysis however, did not involve those portions of the statute now in issue, subsections (A) and (B). The finding of an ambiguity in one portion of § 523(a)(7), does not presuppose that the entire statute is ambiguous. *In re Burns*, 887 F.2d 1541, 1544, n. 3 (11th Cir.1989) ("The finding of ambiguity in that portion of the sentence [pertaining to fines, penalties and forfeiture] does not form a basis to challenge the unambiguous language of the autonomous provision on tax penalties").

In *Ron Pair*, the Court distinguished *Kelly* in finding that resort to the

---

**6.** Also in support of Defendant's position, see *In re Hartman*, 110 B.R. 951 (D.Kan.1990); *In re*  *Oldfield*, 121 B.R. 249 (Bankr.E.D.Ark.1990); *In re Meyers*, (Bankr.W.D.Wash.1990).

legislative history of § 506(b) was unwarranted since the plain language of the statute was unambiguous. The Court noted that the statutory language in question in *Kelly* was to some degree open to interpretation, whereas the language of § 506(b) was clearer. *Ron Pair*, 489 U.S. at 245, 109 S.Ct. at 1032–33. Likewise, the language of subsections (A) and (B) of § 523(a)(7) is clearer than the introductory language examined in *Kelly*.

■ Once the triple negative is taken into account the statute gains clarity. *Burns*, at 1544. Subsections (A) and (B) provide that a tax penalty is dischargeable where it relates to a tax which is discharged "*or*" if the transaction or event giving rise to the penalty occurred more than three years prior to the filing of the bankruptcy petition. *Id.* The statute's wording uses the disjunctive to separate these subsections, thus a literal reading makes clear that a tax penalty can be discharged if it falls within the terms of either subsection.

> "There is nothing in the code that says that if penalties do not come within the provisions of subsection (A) they cannot become dischargeable within the provisions of subsection (B)." *In re Roberts*, 94 B.R. 707, 709 (Bankr.N.D.Okla.1989). The use of the disjunctive, without further qualification of either subsection, leaves no doubt that Congress intended to create two independent measures for the dischargeability of tax penalties. *See, e.g., Garcia v. United States*, 469 U.S. 70, 73, 105 S.Ct. 479, 481, 83 L.Ed.2d 472 (1984); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979) ("terms connected by a disjunctive [should] be given separate meaning unless the context dictates otherwise").

*Burns* at 1545. This reading also takes into account the rules of construction set forth in 11 U.S.C. § 102. Section 102(5) states "In this title— ... (5) 'or' is not exclusive...." This Court cannot say that this statutory language is ambiguous. It is clearer than the language examined in *Kelly* as well as the language in issue in *Ron Pair*. Moreover, an examination of the legislative history only supports the correctness of this position. See *Burns*, at 1546–51; *In re Roberts*, 906 F.2d 1440, 1444 (10th Cir.1940).[7] Defendant would have this Court focus on the statements made by individual legislators during the enactment process; such statements, however, cannot be used to expand or contract the unambiguous language of a statute. In *West Virginia University Hosp. v. Casey*, — U.S. —, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991) ("*Casey*"), Justice Scalia wrote:

> [t]he best evidence of [a statute's] purpose is the statutory text adopted by both Houses of Congress and submitted to the President. Where that contains a phrase that is unambiguous—that has a clearly accepted meaning in both legislative and judicial practice—we do not permit it to be expanded or contracted by the statements of individual legislators or committees during the course of the enactment process. See *Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 [109 S.Ct. 1026, 1030, 103 L.Ed.2d 290] (1989) ("Where, as here, the statute's language is plain, 'the sole function of the court is to enforce it according to its terms.' ").

*Id.*, at — — —, 111 S.Ct. at 1147.

The Court now examines the precedent that Defendant asserts represents the majority view and which supports its position.

*In re Carlton*, 19 B.R. 73 (D.N.M.1982), was the first case to consider this issue. After finding the statute ambiguous on its face the court turned to the legislative history. Relying on the statements of individual legislators and the Senate Report, the court held that § 523(a)(7)(B) concerned

---

7. Defendant asserts that the Joint Statement made by House and Senate leaders carries weight equal to that of a conference report, citing *In re Timbers of Inwood Forest*, 793 F.2d 1380, 1389–99, n. 33 (5th Cir.1986), *vacated*, 802 F.2d 777, *reinstated on reh'g en banc*, 808 F.2d 363 (5th Cir.1987), *aff'd* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). By finding the statute unambiguous, this Court need not turn to the statute's legislative history. *Ron Pair, supra, Casey, supra.*

only those tax penalties for which there was no nondischargeable tax obligation. In essence, the court held that where there was an underlying tax obligation, the tax penalties associated with that tax received the same treatment as the underlying tax regardless of whether the penalties derived from a transaction or event that occurred more than three years before the filing of a bankruptcy petition; thus the court limited subsection (B) to those instances where there is no underlying tax obligation or where such obligation is discharged.

In *Cassidy v. Commissioner*, 814 F.2d 477 (7th Cir.1987), the Seventh Circuit, on an appeal from the United States Tax Court, found that the Appellant's bankruptcy had not discharged tax fraud penalties assessed by the IRS. In support of this finding, the Court cited to § 523(a)(7)(A) and the Senate Report without any analysis or discussion of the statutory language.

Seven courts have followed the *Carlton* and *Cassidy* decisions. However, at this point in time the precedential value of these opinions is, at best, suspect. Perhaps it was best stated by Judge Easterbrook in *A.A. Poultry Farms, Inc. v. Rose Acre Farms, Inc.*, 881 F.2d 1396 (7th Cir.1989), wherein he wrote:

> Sometimes the imminent demise of a precedent may be plain, as when it rests wholly on an opinion since overruled, and in such cases an inferior court may apply today's law sure that the empty shell will break under the slightest pressure. E.g., *Limbach v. Hooven & Allison Co.*, 466 U.S. 353 [104 S.Ct. 1837, 80 L.Ed.2d 356] (1984); *United States v. Burke*, 781 F.2d 1234, 1239 n. 2 (7th Cir.1985); *United States ex rel. Spurlark v. Wolff*, 699 F.2d 354, 357–61 (7th Cir.1983) (en banc); *Norris v. United States*, 687 F.2d 899, 902–03 (7th Cir.1982). When the case stands unquestioned, however, a belief

that the Court would not reach the same decision today if the question were open anew is not a basis for disregarding the law on the books.

> Separating a case that is dead but unburied from a case that is living on borrowed time is hard yet important.

*Id.*, at 1405.

Conscious of this proposition and the fundamental value of precedent in our legal system, this Court is wary of the precedential value of both *Carlton* and *Cassidy*. In *Matter of Cassidy*, 892 F.2d 637 (7th Cir.1990), ("*Cassidy II*"), the Seventh Circuit revisited the dischargeability of Mr. Cassidy's tax penalties. After setting forth the procedural history of the case, the Court found both the doctrines of res judicata and collateral estoppel inapplicable to bar Cassidy's action under Bankruptcy Rule 4007.[8] The Court noted that to have preclusive effect, a ruling must be necessary to the decision, and that any portion not necessary to the outcome of a case is dicta. Consequently, the Court found that "portion of *Cassidy* which concerned the dischargeability of the debt [to be] ... dicta."[9] *Id.*, at 640.

The consequence of this ruling was recently explored in *In re Roberts*, 125 B.R. 534 (Bankr.C.D.Ill.1991), wherein, a bankruptcy court within the jurisdiction of the Seventh Circuit found the question of dischargeability of tax penalties to be an open question in that Circuit, citing *Cassidy II*. After noting that courts are split on this issue, the court followed the Tenth and Eleventh Circuits, *In re Roberts, supra*, and *In re Burns, supra*, to find the tax penalties dischargeable.[10]

Although neither *Carlton* or *In re Hartman*, 110 B.R. 951 (D.Kan.1990), have been expressly overruled by the Tenth Circuit, their value has diminished in light of the

---

8. The Court effectively found that both the District Court and Bankruptcy Court erred. The District Court found Cassidy collaterally estopped from bringing the action, whereas, the Bankruptcy Court had found him barred under the doctrine of res judicata.

9. The Court ultimately found Cassidy judicially estopped to bringing his 4007 motion.

10. In deciding to follow *Roberts* and *Burns*, the Court declined to follow *In re Ferrara*, 103 B.R. 870 (Bankr.N.D.Ohio 1989).

Tenth Circuit's decision in *Roberts*.[11] See *Limbach v. Hooven & Allison Co.,* 466 U.S. 353, 357–61, 104 S.Ct. 1837, 1840–42, 80 L.Ed.2d 356 (1984) (Prior case, although not expressly overruled, must be regarded as retaining no vitality in light of subsequent decision); *United States v. Burke,* 781 F.2d 1234, 1239 n. 2 (7th Cir.1985) ("A court need not blindly follow decisions that have been undercut by subsequent cases").

This Court is unpersuaded by the rulings in the most recent cases that have advanced the Defendant's position, *In re Oldfield,* 121 B.R. 249 (Bankr.E.D.Ark.1990), and *In re Meyers,* 116 B.R. 239 (Bankr. W.D.Wash.1990). While both opinions rely on *Carlton* and *Cassidy,* without substantial analysis or examination, neither makes reference of, or cites to, the more recent Circuit opinions in *Roberts* and *Burns,* or note that *Carlton* has been implicitly overruled by *Roberts.*

Likewise, the courts in *In re Harris,* 59 B.R. 545 (Bankr.W.D.Va.1986), and *In re Gerulis,* 56 B.R. 283 (Bankr.D.Minn.1985), summarily concluded that tax penalties are given the same dischargeability treatment as the underlying tax, citing *Carlton.* In *Matter of Longley,* 66 B.R. 237 (Bankr. N.D.Ohio 1986), the court goes further to support its ruling, citing *Carlton, Gerulis* and the Committee Report to § 523. In doing so, however, the court nowhere concludes that the statute is ambiguous before turning to the Committee Report. See *Ron Pair, supra; Casey, supra.*

*In re Ferrara,* 103 B.R. 870 (Bankr. N.D.Ohio 1989), is an analytically-reasoned opinion in support of Defendant's position. The court in *Ferrara* made a thorough analysis of the issue, determined that the statute was ambiguous and ruled that a tax penalty for which there was no underlying tax obligation was not dischargeable for it was imposed on a transaction that occurred within three years of the petition filing. Unlike the *Ferrara* court, however, this Court has the benefit of two well reasoned and written Circuit opinions that have questioned the foundation upon which *Fer-*

*rara* and the other cases stand. Consequently, this Court, finds the position taken by the courts in *Burns* and *Roberts* to be better reasoned and harmonizes the language of subsections (A) and (B). The position advanced by Defendant violates the rule that the plain statute language, where unambiguous, controls. There being no dispute that the tax penalties assessed pursuant to § 6661 against Plaintiff involve a transaction that occurred more than three years before the bankruptcy filing, the Court hereby finds the tax penalties dischargeable under § 523(a)(7)(B).

The plain statutory language will not permit the expansion Defendant requests. In *Casey,* Justice Scalia noted that Justice Brandeis had similarly rejected such an argument. Justice Brandeis wrote:

> ... [The statute's] language is plain and unambiguous. What the Government asks is not a construction of a statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope. To supply omissions transcends the judicial function. *Iselin v. United States,* 270 U.S. 245, 250–251 [46 S.Ct. 248, 250, 70 L.Ed. 566] (1926).

*Casey,* ——— U.S. at ———, 111 S.Ct. at 1148.

### B. The Status of the § 6621(c) Interest

■ This issue involves the appropriate classification of the interest charged by Defendant under 26 U.S.C. § 6621(c). The question is whether such interest is awarded priority status under § 507(a)(7), or whether it is merely a general unsecured claim. If found to be a priority claim, it would not be discharged by Plaintiff's bankruptcy. 11 U.S.C. § 523(a)(1). Plaintiff makes two arguments—the interest penalty is a penalty and should be discharged, and, regardless of its true nature, it should be dischargeable in the same manner as tax penalties. Defendant argues that the interest penalty is entitled to priority under § 507(a)(7)(A)(iii) because the underlying tax deficiency, had it not been eliminated by the carry-back of net operat-

---

**11.** Both the District Court for the District of New Mexico and the District Court for the Dis-trict of Kansas lie within the jurisdiction of the Tenth Circuit Court of Appeals.

ing losses, would have been nondischargeable. Defendant relies on several cases that hold that interest is nondischargeable where the underlying tax obligation is nondischargeable. *Matter of Larson,* 862 F.2d 112 (7th Cir.1988); *In re Treister,* 52 B.R. 735 (Bankr.S.D.N.Y.1985); *In re Barbier,* 77 B.R. 799 (Bankr.D.Nev.1987) *rev'd on other grounds,* 896 F.2d 377 (9th Cir. 1990).[12]

The Court does not dispute the general rule for which these cases stand. However, the rule, as pronounced by these courts, does not control the resolution of this issue. As the Seventh Circuit in *Larson* observed, "[p]re-petition (or *matured*) interest has ... been treated as part of the 'claim,' accorded the same priority status as the underlying liability, and found nondischargeable where the underlying liability is nondischargeable". *Larson, supra,* at 119. (Citations omitted). However, in *Larson,* as in the other cases, the debtors remained liable for the underlying tax upon which the interest was being assessed. The *Larson* court recognized this correlation between the tax and the interest, stating "[h]ere it is uncontested that the underlying tax liability is nondischargeable. The prepetition interest is thus similarly nondischargeable". *Larson,* at 119. Thus, the holding in *Larson* is based on the existence of an underlying tax obligation owed by the debtor.

■ In the case at bar, there is no underlying priority tax liability which is nondis-

chargeable. Moreover, no case has been cited for the proposition that interest can stand alone without an underlying tax liability, and be accorded priority status.[13]

To resolve this issue, the Court now examines the pertinent provisions of the Bankruptcy Code. *See, Toibb v. Radloff,* —— U.S. ——, 111 S.Ct. 2197, 2199, 115 L.Ed.2d 145 (1991) (where the resolution of a question of federal law turns on a statute, courts should look first to the statutory language and then to the legislative history only if the language is ambiguous).[14]

Section 523(a)(1) excepts from discharge, under § 727, any debt for a tax that receives priority treatment under § 507(a)(7). 11 U.S.C. § 523(a)(1).

■ Section 507(a)(7) grants priority treatment to "unsecured claims of governmental units to the extent" they are for

(A) a tax on or measured by income or gross receipts—

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pend-

---

**12.** This is the general rule; however, courts are split on whether prepetition interest on tax claims falls within § 507(a)(7)(A) as part of the "tax", or § 507(a)(7)(G) as a penalty for pecuniary loss. Compare *In re Larson, supra; In re Treister, supra; In re Young,* 70 B.R. 43 (Bankr. S.D.Ind.1987) *rev'd,* 132 B.R. 395 (S.D.Ind.1990); *In re Brinegar,* 76 B.R. 176 (Bankr.D.Colo.1987); *In re Palmer,* 88 B.R. 101 (N.D.Tex.1988) with *In re Reich,* 66 B.R. 554 (Bankr.D.Colo.1986) *rev'd on other grounds,* 107 B.R. 299 (D.Colo.1989); *In re Jackson,* 80 B.R. 213 (Bankr.D.Colo.1987); *In re Palmer,* 53 B.R. 545 (Bankr.N.D.Tex.1985); *In re Avant,* 110 B.R. 264 (Bankr.W.D.Tex.1989).

**13.** *See, however, Turchon v. United States,* 77 B.R. 398 (E.D.N.Y.1987), wherein a claim for interest was allowed where debtor was "a responsible person" for purposes of 26 U.S.C.

§ 6672, and the underlying tax obligation was extinguished by the earlier bankruptcy of debtor's corporation.

**14.** The Court does not find as dispositive of this issue the report of the Senate Finance Committee, which states:

... Interest which accrued before the Title 11 petition receives the same priority as the tax claim itself. If the tax is entitled to the sixth priority, so also is the related interest. If the tax is only a general unsecured claim, the interest on the tax is a portion of the same claim and therefore receives the same treatment.

S.Rep. No. 95–1106, 95th Cong., 2nd Sess., 20 (1982). This excerpt itself talks in terms of the priority of the underlying tax claim. As previously noted, no such claim exists in this case.

**318**

ing, before the date of the filing of the petition; or

(iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case....

11 U.S.C. § 507(a)(7)(A).

Thus, for a claim to gain priority under § 507(a)(7)(A), it must be an unsecured claim of a governmental unit, for a tax on or measured by income or gross receipts, and must meet one of the three criteria set forth. In this case, there is no dispute that Defendant is a governmental unit (11 U.S.C. § 101(26)), that the interest is measured by income, and that it was assessable after the commencement of the case. 11 U.S.C. § 507(a)(7)(A)(iii). The question is whether the interest is a "claim" and whether it is a "tax".

11 U.S.C. § 101(4) defines claim as "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

Section 6621(c) of the Internal Revenue Code provides, in part:

(c) Interest on substantial underpayments attributable to tax motivated transactions.—

(1) In general.—In the case of interest payable under section 6601 with respect to any substantial underpayment attributable to tax motivated transactions, the rate of interest established under this section shall be 120 percent of the underpayment rate established under this section.

Section 6601, in part, states:

(a) General rule.—If any amount of tax imposed by this title (whether required to be shown on a return, or to be paid by stamp or by some other method) is not paid on or before the last date prescribed for payment, interest on such amount at the underpayment rate estab-

lished under section 6621 shall be paid for the period from such last date to the date paid.

■ Furthermore, if the tax imposed is reduced by reason of a carry-back of a net operating loss, the reduction in tax does not affect the imposition of interest. 26 U.S.C. § 6601(d). The elimination of any tax deficiency as a result of the carry-back of subsequent net operating losses does not abate the obligation to pay interest on such deficiency from the time the taxes became due until elimination of the deficiency. *Manning v. Seeley Tube & Box Co.*, 338 U.S. 561, 70 S.Ct. 386, 94 L.Ed. 346 (1950); *Hastings & Co. v. Smith*, 224 F.2d 875 (3rd Cir.1955); *Standard Oil Co. v. McMahon*, 139 F.Supp. 690, *aff'd.* 244 F.2d 11 (2nd Cir.1957); *Rodgers v. U.S.*, 108 F.Supp. 727, 123 Ct.Cl. 779 (1952).

Consequently, the interest constitutes a claim, for it represents Defendant's right to payment for that amount of interest owing on the tax deficiency, until such deficiency was eliminated, and the compounded interest assessed pre-petition. *See, Larson, supra* at 119, (" 'claim' as a 'right to payment has been read to include interest' ").[15]

■ The real question to be determined is whether the interest constitutes a "tax" as that term is used in § 507(a)(7). For priority purposes, under § 507, federal law defines what constitutes a "tax". Thus, whether a governmental claim is a "tax" is a federal question. *New York v. Feiring*, 313 U.S. 283, 61 S.Ct. 1028, 85 L.Ed. 1333 (1941); *In re Adams*, 40 B.R. 545 (D.C.1984); *In re O.P.M. Leasing Services, Inc.*, 60 B.R. 679 (Bankr.S.D.N.Y.1986); *In re Consolidated Southeastern Group, Inc.*, 75 B.R. 102 (Bankr.N.D.Ga.1987); *In re Beaman*, 9 B.R. 539 (Bankr.D.Ore.1980), *Cf., New Neighborhoods v. W. Va. Worker's Comp. Fund*, 886 F.2d 714 (4th Cir. 1989).

The Bankruptcy Code nowhere defines "tax". However, for purposes of attaining a definition for the word in the bankruptcy

**15.** This amount has been calculated by Defendant at $175,573.32. There being no dispute as to this amount, the Court recognizes this figure as the claim owing.

context, several courts have harmonized the use of the word "tax" in the Bankruptcy Code with that meaning ordinarily employed in the Internal Revenue Code. *See, Mark Anthony Construction, Inc.,* 886 F.2d 1101 (9th Cir.1989); *In re Flo–Lizer, Inc.,* 916 F.2d 363 (6th Cir.1990); *In re Associated Air Services, Inc.,* 75 B.R. 47 (Bankr.S.D.Fla.1987); *Precise Tool & Die Company, Inc.,* 93 B.R. 586 (Bankr. N.D.Ohio 1988).

Section 6601(e) of the Internal Revenue Code, 26 U.S.C. § 6601(e), provides that the word "tax" includes interest on the tax.

**(e) Applicable rules.**—Except as otherwise provided in this title—

**(1) Interest treated as tax.**—Interest prescribed under this section on any tax shall be paid upon notice and demand, and shall be assessed, collected, and paid in the same manner as taxes. Any reference in this title (except subchapter B of chapter 63, relating to deficiency procedures) to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax.

This definition of the word "tax", to include interest under the Internal Revenue Code, has been used by courts to find post-petition interest a part of post-petition taxes under § 503(b), and entitled as an administrative expense.[16] *In re Flo–Lizer, Inc., supra* at 366, (" 'interest is considered to be the cost of the use of the amounts owing a creditor and an incentive to prompt repayment and, thus, an integral part of a continuing debt'.... Congress adopted this position in the Internal Revenue Code. *See* 26 U.S.C. § 6601(e)...."; *In re Mark Anthony Construction, Inc., supra* at

1107–1108 ("interest is generally considered 'an integral part of a continuing debt' ... and interest on unpaid taxes is 'part and parcel of the tax due' under the Internal Revenue Code.... Departing from the general rule and differentiating between taxes and interest only in this limited context makes little sense to us...."); *In re Precise Tool & Die Co., Inc., supra* at 589 ("To accommodate this result the word 'tax' in section 503(b) may be interpreted, as in section 6601 of the Internal Revenue Code, to include such interest"); *In re Associated Air Services, Inc., supra* at 49, n. 1 ("Of course, a tax is imposed under the provisions of the Internal Revenue Code and not under the Bankruptcy Code. The word 'tax' in the Bankruptcy Code must be read in conjunction with the word 'tax' in the Internal Revenue Code"; *In re Fondiller,* 1990 Bankr. LEXIS 709 (Bankr.N.D.Cal.1990).[17]

■ It is a general rule of statutory construction that, when the same words are used in different parts of an act, they are to be given the same meaning. *Barnson v. U.S.,* 816 F.2d 549 (10th Cir.1987); *Doctors Hosp., Inc. of Plantation v. Bowen,* 811 F.2d 1448 (11th Cir.1987); *Hotel Equities Corp. v. Commissioner of Internal Revenue,* 546 F.2d 725 (7th Cir.1976).

The presumption arises that the word "tax", in §§ 507(a)(7) and 503(b), was intended to have the same meaning. This presumption gains strength once § 507 is examined as a whole. Under § 507(a)(1), the post-petition interest on taxes, pursuant to § 503(b), is provided first priority. It would be inconsistent for Congress to have intended a "tax" under § 503(b),

---

**16.** Section 503(b) grants, as an administrative expense

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case:

(B) any tax—

(i) incurred by the estate, except a tax of a kind specified in section 507(a)(7) of this title; or

(ii) attributable to an excessive allowance of a tentative carryback adjustment that the estate received, whether the taxable year to

which such adjustment relates ended before or after the commencement of the case; and

(C) any fine, penalty, or reduction in credit relating to a tax of a kind specified in subparagraph (B) of this paragraph....

**17.** Also turning to § 6601(e) are *Pan American Van Lines v. United States,* 607 F.2d 1299 (9th Cir.1979); *Turchon v. U.S.,* 77 B.R. 398 (E.D.N.Y.1987) ("Interest on taxes is part of the tax. 26 U.S.C. § 6601(e)(1)"); *In re Carter,* 125 B.R. 832 (Bankr.D.Kan.1991); *In re Ridgley,* 81 B.R. 65 (Bankr.D.Ore.1987); *In re Estes,* 87 B.R. 52 (M.D.Tenn.1988); *Matter of Keller & Katkowsky,* 55 B.R. 155 (Bankr.E.D.Mich.1985).

which is given priority, to include interest, and not to include interest in a "tax" under § 507(a)(7)(A).[18]

There being no showing that Congress intended to distinguish the word "tax" in § 507(a)(7) from the meaning given it in § 503(b), the Court finds that interest is part of "tax" as that term is used in § 507(a)(7)(A). *See also, In re Palmer,* 88 B.R. 101, 103 (N.D.Tex.1986) ("... Congress intended that pecuniary losses to the government attributable to specific internal revenue section should be considered 'taxes' for purposes of the priority provisions.").

Thus, the Court finds the interest to constitute an unsecured claim entitled to priority status as a "tax" under § 507(a)(7)(A)(iii), and, as such, nondischargeable pursuant to § 523(a)(1).[19]

### Conclusions of Law

For the reasons set forth above, the Court finds that the tax penalties imposed under 26 U.S.C. § 6661 are dischargeable pursuant to § 523(a)(7)(B), and that the interest penalty imposed under 26 U.S.C. § 6621(c) is a priority claim under § 507(a)(7)(A)(iii), and, thus, nondischargeable pursuant to § 523(a)(1).

Accordingly, to the extent consistent with this opinion, Plaintiff and Defendant's motions for summary judgment are partially granted and partially denied.

This opinion and judgment in connection therewith supercede and amend that opinion and judgment previously entered herein on June 6, 1991.

---

**18.** Ordinarily, pre-petition and post-petition claims are not treated alike. In this case, however, the necessity for a consistent and uniform use of the word "tax" throughout the Bankruptcy Code warrants the result reached herein.

**19.** Debtor did not argue that the 120% interest rate afforded in 26 U.S.C. § 6621(c) was a penalty to the extent it exceeded the normal rate of interest. It would appear that the higher statutory rate set forth in the statute represents a rate determined by Congress to compensate the government for its pecuniary loss in these instances.