**In re Lawrence Edward HALL
and Loretta Hall, Debtors.**

Bankruptcy No. A95–00378.

United States Bankruptcy Court,
D. Alaska.

Dec. 4, 1995.

Robert Crowther, Anchorage, Alaska, for Debtors.

Robert Branman, U.S. Dept. of Justice, Tax Division, Washington, D.C., for I.R.S.

### MEMORANDUM REGARDING OBJECTIONS TO IRS CLAIM AND CONFIRMATION OF CHAPTER 13 PLAN

DONALD MacDONALD, IV, Bankruptcy Judge.

The debtors' objections to the claim of the Internal Revenue Service (IRS) and their Chapter 13 plan duly came before the court for hearing on September 20, 1995. Robert Crowther appeared on behalf of the debtors. Robert Branman appeared for the IRS. The parties submitted briefs in support of their respective positions after the hearing and the issues are ripe for decision. This court has jurisdiction over the dispute pursuant to 28 U.S.C. § 1334(b) and § 157(b)(2)(B). I find for the IRS.

*Background*

The debtors invested in partnership tax shelters in 1983, 1984, and 1985. The IRS examined the partnership returns and assessed additional taxes against the debtors within 240 days of their May 31, 1995, Chapter 13 filing. The debtors filed a Chapter 13 plan which will pay the IRS $29,749.94 as a priority claim. The IRS filed a priority claim in the sum of $35,564.29, however. The debtors have objected to a portion of the IRS claim on the grounds that it contains tax penalties in violation of 11 U.S.C. § 507(a)(8)(G).

The contentions of the parties are illustrated by the following chart:

| Tax Period | Tax | Interest to Petition– IRS | Interest to Petition– Debtor |
|---|---|---|---|
| 12/31/83 | $6,731.00 | $17,257.48 | $13,178.18 |
| 12/31/84 | 3,191.00 | 6,913.58 | 5,216.48 |
| 12/31/85 | 608.00 | 863.23 | 825.28 |
| | $10,530.00 | $25,034.29 | $19,219.94 |

The debtors do not dispute the tax. The debtors contend, however, that $5,814.35 charged as interest is really penalty and should not be included in the IRS priority claim. $5,814.35 represents the difference between $25,034.29 and $19,219.94. No evidence was submitted by either party at the hearing of September 20, 1995.

*Analysis*

11 U.S.C. § 1322(a)(2) requires that Chapter 13 plans provide for full payment of claims entitled to priority under § 507 of the code. Section 507(a)(8)(A) provides priority treatment for certain income taxes. The debtors do not dispute the priority of the taxes under § 507(a)(8)(A)(ii), which provides priority status for taxes assessed within 240 days of the petition. Rather, they contend that a portion of the interest in the IRS claim constitutes a penalty that is not "in compensation for actual pecuniary loss" under § 507(a)(8)(G) and therefore disallowable as a priority claim.

Although § 507(a)(8)(A) only refers to a "tax" as having priority under the Code, most courts have allowed pre-petition interest to be included with the tax as a priority claim. *In re Standard Johnson Co., Inc.*, 90 B.R. 41 (Bankr.E.D.N.Y.1988); *U.S. (I.R.S.) v. Stowe*, 121 B.R. 549 (N.D.Ind.1990); *Matter of Garcia*, 955 F.2d 16 (5th Cir.1992). None of these cases dealt with interest from "tax motivated transactions" arising under former 26 U.S.C. § 6621(c) or (d), however.

Adopted as part of the Deficit Reduction Act of 1984, P.L. 98–369, 98 Stat. 494, 26 U.S.C. § 6621(d) provided for increased interest on "substantial (tax) underpayments attributable to tax motivated transactions." The annual rate of interest was increased by 20 percent for such transactions. Taxpayers who did not participate in a tax motivated transaction yet underpaid their tax incurred interest at the current federal short-term rate plus 3 percent. Thus, if the federal short-term rate was 7 percent, a taxpayer who underpaid his tax would pay 10 percent interest on the underpayment. Someone who participated in a tax motivated transaction, however, would pay 120 percent of 10

**816**

percent or 12 percent annually. In 1986 former subsection (d) was redesignated as (c). Subsection (c) was repealed by § 7721 of Pub.L. 101–239 in 1989, but remains applicable to the tax years 1983, 1984 and 1985.

■ Congress labeled the increased interest payable on tax-motivated transactions as interest, not penalty. According to the Sixth Circuit, such labels are binding on courts and they may not question an exaction labeled as a tax. *In re Mansfield Tire & Rubber Co.*, 942 F.2d 1055 (6th Cir.1991). Other courts have rejected that approach. *In re Cassidy*, 983 F.2d 161 (10th Cir.1992). I agree with *Cassidy* and find that the label alone is insufficient to determine the nature of the obligation.

■ Nonetheless, I find that interest assessed under § 6621(c) does not constitute a penalty. Using the test from *City of New York v. Feiring,* 313 U.S. 283, 61 S.Ct. 1028, 85 L.Ed. 1333 (1941), the interest rate on tax-motivated transactions constitutes a tax. *Feiring* describes taxes as "pecuniary burdens laid upon individuals or their property, regardless of their consent, for the purpose of defraying the expenses of government or of undertakings authorized by it." *City of New York v. Feiring*, 313 U.S. at 285, 61 S.Ct. at 1029. On the other hand, if the sole purpose of an obligation is deterring or sanctioning certain conduct, the obligation is a penalty. 2 *Norton Bankruptcy Law and Practice 2d*, Clark, Boardman & Callaghan, § 42:43 at p. 42–205 (1994).

Here the Halls contend that the legislative history and two tax court decisions clearly indicate the punitive nature of § 6621(c). The legislative history is found in found H.R.Conf.Rep. No. 861, 98th Cong., 2d Sess. 757, 977, 984–986, *reprinted in* 1984 U.S.C.C.A.N. 1445, 1665, 1672–1674. The Halls correctly allege that the measure was listed under the heading "Compliance Provisions" in the legislative history. It was discussed with other measures that were designated as penalties. For instance, penalties for promoting abusive tax shelters were discussed and also adopted in the Deficit Reduction Act of 1984. Additionally, the use of this provision, along with other measures, was discussed as a docket control mechanism for an overburdened tax court.

The two cases cited by the debtors, *Solowiejczyk v. Commissioner*, 85 T.C. 552, 1985 WL 15399 (1985) and *Law v. Commissioner*, 84 T.C. 985, 1985 WL 15356 (1985), mention § 6621(d) but do little to aid their cause. In *Solowiejczyk*, the court considered the taxpayer's argument that application of § 6621(d) to underpayment of taxes due for 1978 was a violation of the due process clause of the constitution. "Petitioners conclude that such retroactive application of a 'penalty-like' statute violates the Due Process Clause of the Fifth Amendment and is, therefore, unconstitutional." *Solowiejczyk v. Commissioner*, 85 T.C. at 555. By using the phrase "penalty-like," the court was simply paraphrasing the taxpayers' contention, not expressing its independent view of § 6621(d) as constituting a penalty. Subsequent language of the opinion is consistent with this premise.

> We reiterate, however, that the issue presented here is imposition of an increased rate of interest pursuant to section 6621(d).... We believe that Congress intended that we make broad use of our authority to impose additional interest on substantial underpayments of tax attributable to tax motivated transactions.

*Solowiejczyk v. Commissioner*, 85 T.C. at 555. The court did not find § 6621(d) to be "penalty-like" in any manner and upheld its constitutionality.

In *Law*, a concurring judge broadly included 6621(d) as one of the "penalties" provided by the Deficit Reduction Act of 1984, when discussing his position regarding the denial of a motion for leave to amend a complaint. Granting leave to amend would have allowed the IRS to obtain § 6621(d) interest, even though the issue was not raised until after conclusion of the trial. Under these circumstances, the judge thought amendment was unfair to the taxpayer. His reference to the penalties language in the legislative history was taken out of context. The language of the legislative history just preceding the penalty language addresses a variety of items, including penalties.

Examples of these provisions (dealing with tax court backlog) are the increased damages assessable for instituting or maintaining Tax Court proceedings primarily for delay or that are frivolous or groundless (sec. 6673), the adjustment of interest rates (sec. 6621), the valuation overstatement and substantial understatement penalties (secs. 6659 and 6661), and the tax straddle rules (secs. 1092 and 1256).

H.R.Conf.Rep. No. 861, 985 (1984), *reprinted in* 1984 U.S.C.C.A.N. 1673. I regard his reference to assertion of penalties as *dicta,* that provides no basis for determining the tax-penalty issue currently before the court.

The interest assessed under § 6621(c) is a tax. It is primarily a burden on individuals without their consent for the purpose of defraying the expenses of government. As part of the Deficit Reduction Act, a major aim of the assessment was to lower the deficit through collection and increased taxation of taxpayers who utilize abusive "tax shelters." While compliance with the Tax Code and controlling the tax court's overburdened docket were certainly considerations, they were secondary to the primary purpose of the legislation: reducing the deficit. With a penalty, the sole purpose is to deter conduct, not to raise revenues. This legislation served to both reduce the tax court burden and to raise revenues; it was not solely punitive. It is a tax.

█ This reading of § 6621(c) is consistent with the Supreme Court's decision in *Meilink v. Unemployment Reserves Commission,* 314 U.S. 564, 62 S.Ct. 389, 86 L.Ed. 458 (1942). There the Court found a 12 percent interest rate charged by the California Unemployment Reserves Commission on unpaid taxes did not constitute a penalty under the Bankruptcy Act. The court stated:

Petitioner seeks to establish that the twelve per cent exaction here in question is not 'interest' by pointing to Article XX, Section 22 of the California Constitution, which provides that, except for specified institutions, the rate of interest on loans, and on accounts after demand or judgment, shall be seven per cent, and leaves the parties free to contract in writing for a rate not exceeding ten per cent. We do not understand that as a matter of State law the California legislature was thereby forbidden to prescribe the higher rate here involved. And the mere difference in rates does not establish that the twelve per cent rate is not 'interest' within the meaning of § 57, sub. j, of the Bankruptcy Act.

It is common knowledge that interest rates vary not only according to the general use value of money but also according to the hazard of particular classes of loans. Delinquent taxpayers as a class are a poor credit risk; tax default, unless an incident of legitimate tax litigation, is, to the eye sensitive to credit indications, a signal of distress. A rate of interest on tax delinquencies which is low in comparison to the taxpayer's borrowing rate—if he can borrow at all—is a temptation to use the state as a convenient, if involuntary, banker by the simple practice of deferring the payment of taxes.

Another variable is the amount necessary to compensate for the trouble of handling the item. The legislature may include compensation to the state for the increased costs of administration in the exaction for delay in paying taxes without thereby changing it from interest to penalty. (footnotes omitted)

Nor do I conclude that increasing the interest rate for certain delinquent taxpayers by 20 percent of the federal underpayment rate somehow changes the obligation from interest to penalty.

There are several additional reasons for finding § 6621(c) interest enforceable. First, no court has found such interest to constitute a penalty not in compensation for actual pecuniary loss. The only court that considered the issue ruled adversely to the taxpayer. *In re Hopkins,* 131 B.R. 308, 320 (Bankr. N.D.Tex.1991).

Finally, the IRS proof of claim is *prima facie* evidence of the validity and amount of the claim. Rule 3001(f), Federal Rules of Bankruptcy Procedure. The debtors have the burden of presenting evidence rebutting the claim. The debtors presented no evidence indicating the § 6621(c) interest was not in compensation for actual pecuniary loss.

818

*Conclusion*

The debtor's objections to the IRS proof of claim are overruled and the claim is allowed. As the debtors' plan fails to provide for the full amount of the claim, confirmation of the plan will be denied. A separate order and judgment will be entered consistent with this memorandum.