**In re Giuseppe GALVANO, Debtor.**

**Bankruptcy No. 189–93260–260.**

United States Bankruptcy Court,
E.D. New York.

July 19, 1990.

---

Steven M. Coren, P.C., New York City by Steven M. Coren, Randy L. Braun, of counsel, for debtor.

Robert Abrams, Atty. Gen. of the State of New York, New York City by Marcie S. Mintz, Asst. Atty. Gen., of counsel, for New York State Dept. of Taxation & Finance.

## DECISION

CONRAD B. DUBERSTEIN, Chief Judge.

Giuseppe Galvano, ("Galvano" or "the Debtor"), the debtor herein, seeks to have this Court review and determine the validity and legality of certain sales and use taxes assessed by the New York State Department of Taxation and Finance ("Department of Taxation"). The instant proceeding comes before this Court on a mo-

tion pursuant to Section 505(a) of the Bankruptcy Code.[1] The motion is opposed by the Department of Taxation on the grounds that this Court lacks jurisdiction to determine the Debtor's tax liability under § 505(a)(2)(A) inasmuch as his liability has been contested and adjudicated by a tribunal of competent jurisdiction prior to the Debtor's filing of his Chapter 7 petition.

## FACTS

Giuseppe Galvano is the sole owner and principal officer of Joe–Gal Pizza, Inc. ("Joe–Gal"), a corporation that operates a pizzeria in Manhattan which is currently under reorganization pursuant to Chapter 11 of the Bankruptcy Code before the Honorable Howard C. Buschman III in the Southern District of New York. Galvano's individual Chapter 7 petition is presently pending in this Court and appears to have been precipitated by certain tax liabilities, a majority of which stem from the operation of Joe–Gal. The schedules annexed to the petition list priority debts for corporate income taxes owed to the Internal Revenue Service, and corporate sales and use taxes owed to New York State for which he may be liable. Additionally, a secured debt is listed as owing to Astoria Federal Savings Bank on the Debtor's principal residence and two unsecured debts, one owed to his estranged wife, and the other to a lawyer, presumably for legal services rendered.

The Debtor brings the instant motion under § 505(a) to determine his tax liability for sales and use taxes arising out of three separate assessments levied by the Department of Taxation against him individually and as the principal officer of the corporation. The assessments are comprised of sales and use taxes for two periods namely, June 1, 1981 through May 31, 1984 (the "first" assessment), June 1, 1984 through May 31, 1987 (the "second" assessment), and interest and penalties on the taxes levied from June 1, 1985 through May 31, 1987 (the "third" assessment).

The underlying reason for the Department of Taxation's opposition is grounded on the proposition that the liability of the Debtor and Joe–Gal has been fully contested and adjudicated by a tribunal of competent jurisdiction prior to the Debtor's filing of his Chapter 7 petition. It further opposes the Debtor's motion on the ground that the Debtor participated in the filing of an identical motion under § 505(a) for the corporation in its Chapter 11 proceeding. The corporation's motion was denied in its entirety by Judge Buschman in those proceedings. *In re Joe–Gal Pizza, Inc.*, Case No. 87B–11503 (HCB), slip op. (Bankr.S.D. N.Y. May 9, 1989).

The procedural history of the assessments is as follows. On September 4, 1984, Joe–Gal received a notice of Determination and Demand for Payment of Sales and Use Taxes in the amount of $172,465.59 for the period of June 1, 1981 through May 31, 1984, ("the first assessment"). The notice was addressed to Joe–Gal and to the Debtor individually in his capacity as a responsible officer of the corporation and was mailed to Galvano's home. It expressly stated that the Debtor was personally liable for the taxes listed as due from the corporation, and set out the statutory period during which the assessment could be appealed. In compliance thereto, the Debtor filed a petition for Joe–Gal to contest the assessment. He did not, however, file a separate petition to contest his individual liability under the assessment. As a result of the petition, a hearing was held on October 28, 1986 before the Tax Appeals Bureau of the New York State Department of Taxation ("Tax Bureau"), and a decision was issued thereup-

---

**1.** Section 505(a) states in pertinent part:
(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) The court may not so determine—
(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title....
11 U.S.C. § 505(a).

on on March 20, 1987. The Tax Bureau concluded that the amount of the first assessment was correct, and the audit methodology used to determine the amount was proper.[2] Joe–Gal did not thereafter take any appeal to contest the decision of the Tax Bureau. In August of 1987, approximately six months after the decision of the Tax Bureau, Joe–Gal filed for relief under Chapter 11 of the Bankruptcy Code.

Subsequent to Joe–Gal's filing for bankruptcy, the Debtor and Joe–Gal received a series of Statements of Proposed Audit Adjustment from the Department of Taxation. The first Statement, dated September 16, 1987, detailed additional assessed taxes due from Joe–Gal and the Debtor for the period of June 1, 1984 through May 31, 1987, and requested that certain financial data be submitted to complete the audit process. On November 16, 1987, after receiving the requested financial data, a second Statement revising the amount of the taxes assessed for the period June 1, 1984 through May 31, 1987 was sent by the Department of Taxation ("the second assessment"). Furthermore, on that same day, Joe–Gal and the Debtor received a third Statement ("the third assessment") which detailed the tax penalties and interest due on a portion of the taxes set forth in the second assessment.

On December 7, 1987, the Debtor, acting as president of Joe–Gal, signed a consent setting the second and third tax assessments at $27,815.49 and 1,699.97, respectively. This consent was signed subject to approval by the Bankruptcy Court.[3] Following receipt of the signed consent, the Department of Taxation sent Joe–Gal and the Debtor each Notices of Determination and Demands for Payment of Sales and Use Taxes which reflected the amount of taxes agreed upon in the consents.[4]

Notwithstanding its consent to the second and third assessments and after having received the notices listing the amount of taxes due, Joe–Gal filed a motion before Judge Buschman virtually identical to the instant application. Judge Buschman denied the motion, holding that the first assessment had been "contested and adjudicated" before a tribunal of competent jurisdiction and that § 505(a) precluded further determination of Joe–Gal's tax liability by the Bankruptcy Court. Judge Buschman also declined to review the amount of liability due under the second and third assessments. He found the question of liability to be moot with respect to these assessments because the signed consent was a settlement of all remaining tax liability. *In re Joe–Gal Pizza, Inc.,* Case No: 87B–

---

2. At the hearing Joe–Gal challenged the correctness of the amount of the first tax assessment and argued that the methodology that the Tax Audit Division used to reach the amount assessed was faulty. In particular, it challenged the Audit Division's estimates of how much dough was needed to make a pizza pie, and the Division's determination that pizza made up only 30% of sales as opposed to other Italian specialties and beverages on the menu. Additionally, Joe–Gal opposed the Audit Division's use of a test period to estimate taxes due for the three year period. It should be noted that the corporation was represented at this hearing by an attorney and a certified public accountant. After hearing arguments about the propriety of the Audit Division's estimating methods, the Hearing Officer decided that the amount of the Audit Division's assessment was correct given Joe–Gal's failure to maintain adequate records of sales or receipts. It was also determined that the methodology used by the audit division was proper in light of the dearth of reviewable records kept by the corporation. *Matter of Joe–Gal Pizza, Inc.,* N.Y.S.Tax Comm'n, (March 20/87).

3. In light of the fact that Joe–Gal was at this time undergoing reorganization under Chapter 11 in the Southern District of New York, permission of the Court was required for it to agree to the amount and allowance of the claim. There has been no evidence presented to this Court to indicate that such approval was received from Judge Buschman. However, his decision regarding the second and third assessments on Joe–Gal's § 505 motion appears to recognize and validate the consents.

4. The notices which the Debtor and Joe–Gal received were sent as a precaution because the consents signed for these assessments were subject to the approval of the Bankruptcy Court. *Matter of Joe–Gal Pizza, Inc.,* N.Y.Div.Tax App. (April 12, 1990). Sending the notices did not, however, violate the automatic stay because § 362(b)(9) permits a taxing authority to send notices of deficiencies without violating the stay.

11503 (HCB), slip op. (Bankr.S.D.N.Y. May 9, 1989).[5]

Prior to Judge Buschman's decision rendered in May 1989, the Debtor, acting individually and as the principal officer of the corporation, petitioned the Department of Taxation for a review of the second and third assessments which he had consented to on behalf of his corporation. A hearing pursuant to that petition was scheduled for January 26, 1990. In October of 1989, the Debtor filed a Chapter 7 petition in his individual capacity in this Court. Subsequently, but prior to the hearing, he filed the instant motion seeking a determination of his tax liability for the three assessments under § 505(a).

In accordance with the Debtor's individual bankruptcy filing, the January 26, 1990 hearing before the Tax Bureau on the second and third assessments was adjourned in compliance with § 362, the automatic stay provision of the Bankruptcy Code. A similar motion made to stay the proceeding before the Tax Bureau for Joe–Gal was denied. As a result, a hearing on the validity of the signed consent for the assessments, and the amount of liability owed by Joe–Gal for the second and third assessments was held on January 26, 1990 before Administrative Law Judge Kevin Cahill.

At the hearing, an attorney represented both Joe–Gal, the corporation, and Galvano, the individual. The attorney attempted to make a limited appearance for Joe–Gal because he feared that his participation in its contest of tax liability for the second and third assessments would prejudice Galvano's individual right to contest the liability. Judge Cahill refused to recognize the limited appearance, finding that no prejudice to Galvano would result given that the hearing had been stayed and adjourned with respect to him. Nevertheless, the attorney removed himself from the hearing, opining that his continued presence would jeopardize Galvano's rights to contest the matter in the Bankruptcy Court.

Following the hearing, the Tax Bureau determined that the consent signed by the Debtor for the second assessment was valid and binding on Joe–Gal. Furthermore, the methodology used by the Department of Taxation to calculate the interest and penalties due for the third assessment was found to have been made without error. The decision of the Tax Bureau therefore fixed the amount of Joe–Gal's tax liability for these assessments. However, because Judge Cahill specified that the hearing was not to prejudice the individual rights of the Debtor, it appears that Galvano has retained his right to a separate hearing on these assessments.

## DISCUSSION

█ Section 505(a) of the Bankruptcy Code grants authority to the Bankruptcy Court to determine the amount or legality of "any tax, any fine or penalty relating to a tax, or any addition to tax," as long as the amount or legality of the tax has not been contested or adjudicated by a "judicial or administrative tribunal of competent jurisdiction" before the filing of the bankrupt-

---

5. In its motion Joe–Gal argued that a contest and adjudication did not occur because it was not adequately represented at the hearing before the Tax Bureau. It asserted that it's lack of adequate representation transformed the Tax Bureau's decision into a default judgment, thereby allowing a § 505 review because a default judgment is not a "contested matter" within the language of § 505(a)(2)(A). *In re Joe–Gal Pizza, Inc.*, Case No. 87B–11503 (HCB), slip op. at 7 (Bankr.S.D.N.Y. May 9, 1989) (citing *Tapp v. Fairbanks North Star Borough, (In re Tapp),* 16 B.R. 315 (Bankr.D.Alaska 1981); *In re Buchert,* 69 B.R. 816 (Bankr.N.D.Ill.1987)). Joe–Gal also urged the bankruptcy court to exercise its powers as a court of equity under 11 U.S.C. § 105(a), and to "look beyond the fact that a hearing was conducted and examine whether it

in fact asserted its rights ..." *In re Joe–Gal Pizza, Inc.,* Case No. 87B–11503, slip op. at 10.

Judge Buschman rejected this default judgment argument as well as the equity argument. He found that Joe–Gal was actively represented at the hearing before the Tax Bureau by an attorney and a certified public accountant, and thus held that a contest and adjudication occurred and that the bankruptcy court was precluded from any reevaluation or redetermination of the amount of liability under § 505(a)(2)(A). In addition, he found that equity could not justify a redetermination of the Tax Commission's decision where the only flaw in the decision of the Tax Commission was that Joe–Gal was "unhappy with the results obtained by its representatives before [the] tribunal." *Id.*

cy petition. 11 U.S.C. § 505(a). The Bankruptcy Court is, therefore, precluded from reviewing any determination of a debtor's tax liability where that liability has already been contested or adjudicated. *In re Monongahela Rye Liquors, Inc.,* 141 F.2d 864 (3d Cir.1944); *In re Century Vault Co.,* 416 F.2d 1035, 1041 (3d Cir.1969); *Northwest Beverage, Inc. v. Johnson, (In re Northwest Beverage, Inc.),* 46 B.R. 631, 635 (Bankr.N.D.Ill.1985) (citing *Arkansas Corp. Comm'n v. Thompson,* 313 U.S. 132, 145, 61 S.Ct. 888, 892, 85 L.Ed. 1244 (1941).

▇ Section 505(a) specifies that "the court *may* determine the amount or legality of any tax...." 11 U.S.C. § 505(a)(1) (emphasis added).[6] This language indicates that the Bankruptcy Court's authority to determine a debtor's tax liability is discretionary. Accordingly, the Court may decline to review a debtor's tax liability and refer the debtor's motion for determination to the Tax Court.

▇ There are a number of factors which may be considered by a court when deciding whether to undertake a § 505 review. These factors include the complexity of the tax issues to be decided, the need to administer the bankruptcy case in an orderly and efficient manner, the burden on the Bankruptcy Court's docket, the length of time required for trial and decision, the asset and liability structure of the debtor, and the prejudice to the debtor and potential prejudice to the taxing authority. *In re Hunt,* 95 B.R. 442, 445 (Bankr.N.D.Tex. 1989).

▇ The policy behind § 505 is to protect creditors and ensure the finality of determinations of tax liability reached prior to bankruptcy. In enacting § 505, Congress was concerned with protecting creditors

from the dissipation of an estate's assets which could result if creditors were bound by a tax judgment which a debtor, due to its ailing financial condition, failed to contest. *Northwest Beverage,* 46 B.R. 631; *In Fiedel Country Day School,* 55 B.R. 229, 231 (Bankr.E.D.N.Y.1985); *see also, In re Century Vault Co.,* 416 F.2d 1035, 1041 (3d Cir.1969). (In discussing the rationale for § 2a(2A) of the Bankruptcy Act, the precursor to § 505, the Court explained that one type of "hazardous situation" that confronts creditors is where the debtor has little or no interest in contesting a tax assessment and permits an adjudication to be taken against him prior to bankruptcy. The Court remarked that in this situation creditors "should not be bound by omissions of the bankrupt.")

In the present case, the Debtor's § 505 motion does not appear to comport with the policy of protecting creditors against the inaction of disinterested debtors. The Debtor is neither inactive nor disinterested and has few creditors other than the federal and state taxing authorities. Moreover, the impetus for his § 505 motion seems to be dissatisfaction with the decision of the Tax Bureau, rather than the preservation of his estate.

Congress also intended that § 505 would operate to ensure the finality of tax determinations by prohibiting a debtor from having the Bankruptcy Court redetermine tax liability already contested and decided to be legitimate by an administrative or judicial tribunal. *Northwest Beverage,* 46 B.R. at 635. In this way, § 505(a) operates similarly to *res judicata,* prohibiting a debtor from obtaining an additional determination of an already reviewed and determined tax liability. 124 Cong.Rec. H11110–11 (daily ed. Sept. 28, 1978); 124 Cong.Rec. S17426–28 (daily ed. Oct. 6, 1978); (remarks of Rep.

---

**6.** Section 505(a) allows a review of "any tax". 11 U.S.C. § 505(a). As a result, both state and federal tax liabilities may be reviewed, providing that the review complies with the language of § 505(a)(2)(A). Thus, for example, Bankruptcy Courts have reviewed assessments of state Retailers' Occupation Taxes, *Northwest Beverage, Inc. v. Johnson, (In re Northwest Beverage, Inc.),* 46 B.R. 631 (Bankr.N.D.Ill.), state sales taxes, *In re Tapp,* 16 B.R. 315 (Bankr.Alas-

ka 1981), state real property taxes, *Al L. Lipetzky v. Department of Revenue of the State of Montana, (In re Al L. Lipetzky),* 64 B.R. 431 (Bankr. Mont.1986), city ad valorem taxes, *In re Electronic Theatre Restaurants, Inc.,* 85 B.R. 45 (Bankr.N.D.Ohio 1988), federal income taxes, *In re Dolard,* 519 F.2d 282 (9th Cir.1975), and federal employment taxes, *In re Vermont Fiberglass, Inc.,* 76 B.R. 358 (Bankr.Vt.1987).

Edwards and Sen. DeConcini). See p. 304 of the code. *See also, City of New York v. Fashion Wear Realty Co., Inc. (In the Matter of Fashion Wear Realty Co., Inc.,* 14 B.R. 287, 291 (S.D.N.Y.1981). (Where the Court explained that § 2a(2A) of the Bankruptcy Act, the predecessor of § 505(a)(2)(A), was intended to "ensure that a debtor can seek relief from improper tax charges; but [was] ... not intended to award the debtor a second bite at the apple when a competent tribunal has already ruled."); *In re Ishpeming Hotel Co.,* 70 B.R. 629, 631 (Bankr.W.D.Mich.1986), ("[T]here is nothing in the history of bankruptcy or reorganization legislation to support the theory that Congress intended to set up the federal courts as super-assessment tribunals over state taxing agencies....") (quoting *Arkansas Corp. Comm'n v. Thompson,* 313 U.S. at 145, 61 S.Ct. at 892).

In light of the *res judicata* principles behind § 505, the Debtor's motion is nothing more than an attempt to gain a second bite of the apple through his request that this Court redetermine tax liability which was previously contested before the Tax Bureau.

■ In order to more clearly evaluate the issue of whether a § 505 review is warranted, this Court must analyze New York State's taxing procedure and structure of review in order to ascertain whether a contest and adjudication of the assessments actually took place.

The State of New York has a thorough procedure by which taxpayers may contest tax assessments through administrative hearings. and may appeal the results of those hearings through additional proceedings. Section 1138 of the New York State Tax Law enables the Department of Taxation to issue a Notice of Determination of Tax Liability to any person liable for the collection or payment of a tax in the event a tax return has not been filed, or if a return that had been filed was incorrect or insufficient. N.Y.Tax Law § 1138 (McKinney 1990); *see, Matter of Parsons v. State Tax Comm'n,* 34 N.Y.2d 190, 313 N.E.2d 57, 356 N.Y.S.2d 593 (1974). Section 1138

further provides that the Notice of Determination "finally and irrevocably fix[es] the tax, unless the person against whom it is assessed" petitions for a hearing on the determination within ninety days. *Id.* If a petition is filed and a hearing is held, the resulting decision may be appealed via an Article 78 proceeding. N.Y.Civ.Prac.L. & R. § 7801 *et seq.,* (McKinney 1990). An Article 78 proceeding is the sole method for obtaining judicial review of a § 1138 hearing which has already fixed a tax assessment. *Stacy v. State of New York,* 82 Misc.2d 181, 368 N.Y.S.2d 448 (Sup.Ct. 1975). However, while an Article 78 proceeding is the correct way to appeal a tax determination, a hearing to challenge an officer's liability may be more properly addressed in a declaratory judgment action in state court. *Id.* A taxpayer has four months to commence an Article 78 proceeding. In the event a taxpayer fails to do so, the amount of the tax assessment as determined in the § 1138 hearing becomes fixed and final. N.Y.Civ.Prac.L. & R. § 7801 *et seq.,* (McKinney 1990). *See also, West Mountain Corp. v. State Dept. of Taxation and Finance,* 105 A.D.2d 989, 482 N.Y.S.2d 140 (1984), *aff'd,* 64 N.Y.2d 991, 478 N.E.2d 203, 489 N.Y.S.2d 62 (1985).

■ In the present case, the Debtor, as the principal officer of Joe–Gal, was clearly a responsible person liable for the collection of fiduciary taxes. N.Y.Tax Law § 1131 (McKinney 1990). This section provides, in pertinent part, that the " 'person required to collect any tax imposed by this article' shall include ... any officer, director or employee of a corporation or of a dissolved corporation ... who as such officer, director or employee is under a duty to act for such corporation ... in complying with any requirement of this article." N.Y.Tax Law § 1131 (McKinney 1990). The Debtor has expressly admitted that his liability for the taxes assessed against the corporation is derivative, and does not contest his status as the principal officer of Joe–Gal. In recognition of the Debtor's derivative liability, the notices for each of the three tax assessments at issue in his motion were addressed to Joe–Gal and to

Galvano individually as officer of the corporation. As a result, the Debtor and the corporation shared the same ninety day period in which to contest their assessed tax liability.

Although the Debtor filed a petition to contest the corporation's liability for the first assessment within ninety days in accordance with § 1138, the Debtor did not likewise file a petition to contest *his personal liability* as principal officer. Accordingly, once the amount of tax liability was fixed for Joe–Gal, the Debtor's individual, derivative liability for the taxes also became fixed. N.Y.Tax Law § 1131 (McKinney 1990). *See, e.g., Halperin v. Chu, (In re Halperin),* 134 Misc.2d 105, 509 N.Y.S.2d 692, 694 (N.Y.Sup.Ct.1986), *aff'd,* 138 A.D.2d 915, 526 N.Y.S.2d 660 (1988). In *Halperin,* the State Supreme Court upheld the Tax Commission's refusal to grant a corporate officer's request for a hearing on his individual liability for corporation's tax obligations under § 1138 where the corporation timely filed its petition for review but the officer did not.

Joe–Gal's reaction to this fixing of liability by the Tax Bureau was to file for a § 505 review of the liability in its Chapter 11 case in the Southern District of New York. *In re Joe–Gal Pizza, Inc.,* Case No. 87B–11503 (HCB), slip op. (Bankr.S.D.N.Y. May 9, 1989). Similarly, Galvano's motion before this Court evidences his objection to the results of the Tax Bureau's hearing. As previously discussed, Joe–Gal's motion for § 505 review was denied by Judge Buschman on the grounds that the liability for the first assessment had been contested and adjudicated with regard to amount and legality by a tribunal of competent jurisdiction. *Id.* at 10.

Similarly, this court is precluded from redetermining the amount and legality of the first assessment for the Debtor. Our decision relies on Judge Buschman's finding and conclusion that a full contest and adjudication of the corporation's liability for the first assessment occurred which fixed the amount of its tax obligations. Additionally, the holding is based on the Debtor's failure to timely file a petition

challenging his individual liability under the first assessment. By reason of the foregoing, this Court denies the Debtor's motion as it pertains to the first assessment. A review of the second and third assessments, however, is less clearly barred by § 505. As discussed above, Judge Buschman refused to redetermine the amount of taxes owed in these assessments on the ground that the consent between Joe–Gal and the Department of Taxation, which was signed by the Debtor, constituted a final and binding settlement thereby removing any necessity for review under § 505(a), *In re Joe–Gal Pizza, Inc.,* Case No. 87B–11503 (HCB), slip op. (Bankr. S.D.N.Y. May 9, 1989). However, the subsequent hearing before, and decision of, the Tax Bureau on these assessments raises the issue of whether a full contest and adjudication had actually occurred with regard to Galvano as an individual debtor. *Matter of Joe–Gal Pizza, Inc.,* N.Y.Div.Tax App. (April 12, 1990).

While the circumstances surrounding that hearing before the Tax Bureau have been detailed above, certain facts are worthy of additional discussion. As previously mentioned, the hearing was adjourned with respect to the Debtor but not with respect to Joe–Gal. The adjournment of the hearing is significant because Judge Cahill specified that his decision to continue the hearing for the corporation was not to prejudice the rights of the Debtor, and that the Debtor's subsequent eligibility to contest the assessments was not to be jeopardized by Joe–Gal's actions at the hearing. In light of this, it could be argued that a contest and adjudication of the amount of the Debtor's personal liability for these tax assessments did not occur and that redetermination under § 505 is warranted.

A careful review of the facts leads to a contrary conclusion. The Debtor's status as the principal officer of Joe–Gal and his role as the person responsible for the collection and payment of the corporation's sales and use taxes contradicts the argument that no contest and adjudication of the Debtor's liability for the second and third assessments occurred. This contradiction lies in the fact that the liability of

the Debtor for sales and use taxes flows directly from Joe–Gal. The amount of the Debtor's liability depends entirely upon the amount of tax that Joe–Gal as a corporation owes, and any increase or decrease in tax liability that accrues to Joe–Gal correspondingly attaches to the Debtor. Therefore, any determination of the amount of taxes owed by Joe–Gal also determines the amount of taxes owed by the Debtor.

The practical result of the fact that liability runs directly from Joe–Gal to the Debtor is that Judge Cahill's decision on the amount of sales and use taxes owed under the second and third assessments for Joe–Gal also determined the amount of taxes owed by the Debtor as principal officer of the corporation and in his individual capacity. The fact that the Debtor's rights were not to be prejudiced by Judge Cahill's decision does not alter the fact that the amount of tax owed by Joe–Gal and by the Debtor, due to his relationship to Joe–Gal, was conclusively determined by the Tax Bureau. Consequently, this Court must find that the taxes owed by the Debtor have been contested and adjudicated such that a further reevaluation is inappropriate.

■ The purpose behind § 505 is to contest the amount of taxes owed. Here, the only challenge by the Debtor can be that he is not individually liable for the amounts assessed and fixed against Joe–Gal. It is abundantly clear that the objective of § 505 would not be served by this Court hearing this matter. This is not to say that the Debtor is without recourse on the subject of his tax liability. As a result of Judge Cahill's adjournment, it appears that the Debtor continues to have the opportunity to be heard before the Tax Bureau or in an appropriate state court, at which time he may argue that liability should not flow directly from Joe–Gal to him as principal officer and may raise any other defenses. *Stacy v. State of New York*, 82 Misc.2d 181, 368 N.Y.S.2d 448 (N.Y.Sup.Ct.1975).

From the facts before this Court, any decision made in a § 505 proceeding which the debtor seeks would necessarily adopt the amount of liability found to be due from Joe–Gal for sales and use taxes. Ac-

cordingly, the Debtor's motion for a § 505 review of his tax liability for the second and third assessments is denied.

For the reasons hereinabove set forth, the Debtor's motion for § 505 review of his tax liability for the first, second, and third assessments is denied. Submit order consistent with this opinion.