**In re Ronald Eugene MILLER and Jennifer Lynn Miller, Debtors.**

**Ronald Eugene Miller and Jennifer Lynn Miller, Plaintiffs,**

v.

**Internal Revenue Service, Defendant.**

**Bankruptcy No. 00–62869.**
**Adversary No. 02–6086.**

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

July 11, 2003.

**424**

Gerald B. Golub, Canton, OH, for debtor.

Elizabeth Lan, Lydia Bottome, U.S. Dept. of Justice, Gerald C. Miller, Washington, DC, for defendant.

Wallace W. Walker, Jr., Wallace Walker & Co. LPA, Brecksville, OH, for trustee.

## MEMORANDUM DECISION

RUSS KENDIG, Bankruptcy Judge.

This adversary proceeding is before the court upon the motion for partial summary judgment and for abstention and memorandum in support filed by defendant the United States of America, on behalf of its agency the Internal Revenue Service (hereafter "the IRS"), the memorandum in opposition filed by plaintiffs Ronald Eugene Miller and Jennifer Lynn Miller (hereafter "the Millers"), and the reply filed by the IRS.

This matter came on for an oral hearing on June 23, 2003. Ronald Eugene Miller and Gerald B. Golub, counsel for the Millers, appeared in person. Elizabeth Lan, counsel for the IRS, participated telephonically. The matter was then adjourned to a status conference on June 26, 2003. Participating in the status conference were Attorney Golub, (hereafter "counsel for the Millers"), Attorney Lan, (hereafter "counsel for the IRS"), and James R. Kandel, trustee (hereafter "the trustee").

## JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the general order of reference entered in this district on July 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (I). The following constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## FACTS

On August 29, 2000, the Millers filed a voluntary petition under Chapter 7. On January 10, 2001, the trustee filed a request to issue notices to creditors to file proofs of claim. A bar date of April 13, 2001 was established. The Millers received a discharge of their debts on February 28, 2002.

On April 2, 2001, the IRS filed a proof of claim in the amount of $101,215.55 for unassessed federal income tax liabilities

for tax years 1994, 1995 and 1996. *See* Proof of Claim No. 40. This proof of claim included interest to the date of the petition. *See id.* On February 4, 2002, the IRS filed an amended proof of claim in the amount of $242,211.00 to correct the unassessed liability and deficiency amounts of the initial proof of claim. *See* Proof of Claim No. 47. On April 1, 2002, the IRS filed a second amended proof of claim in the amount of $431,394.50. *See* Proof of Claim No. 48. The second amended proof of claim reflects that the IRS has an unsecured priority claim in the amount of $359,678.05 for the unassessed income tax liabilities of the Millers for tax years 1994, 1995 and 1996, including interest to the petition date, and an unsecured general claim in the amount of $71,716.45 for penalties to the date of the petition on the unsecured claims, including interest on the penalties. *See id.*

On March 6, 2002, the IRS sent the Millers a notice of deficiency for their unpaid federal income tax liabilities for tax years 1994, 1995 and 1996. *See* Decl., Ex. D., Mem. in Supp. of Mot. for Part. Summ. J. The IRS proposed to adjust the Millers' income for the applicable tax years by the respective amounts of $363,563.00, $247,053.00 and $190,966.00 to account for income it alleged the Millers had received from Mr. Miller's company, Factory Industrial Supply, during those years. *See id.* This resulted in a deficiency and a penalty or addition to tax under 26 U.S.C. § 6662(a) of $115,367.00 and $23,073.40, $72,361.00 and $14,372.40, and $54,483.00 and $10,841.00 respectively for the tax years 1994, 1995 and 1996. *See id.* The

Millers had ninety days from when they received the notice of deficiency to contest the proposed deficiencies in the United States Tax Court. *See id.* If the Millers failed to contest the proposed deficiencies within the applicable time frame, the IRS had ninety days within which to assess the Millers. *See id.* Nothing in the record indicates that the Millers contested the proposed deficiencies.[1] Counsel for the IRS confirmed this in the oral hearing on June 23, 2003.[2]

On or about August 1, 2002, the IRS assessed the Millers for unpaid federal income tax liabilities for tax years 1994, 1995 and 1996, in the respective amounts of $115,367.00, $72,361.00, and $54,483.00, plus statutory additions and interest from the date of assessment. *See* Decl., Ex. E., Mem. in Supp. of Mot. for Part. Summ. J. The Millers had executed a consent to extend the time to assess tax for the tax year 1994, extending the time within which the IRS could assess a liability for that year to December 31, 1998. *See* Decl., Ex. G., Mem. in Supp. of Mot. for Part. Summ. J. And then prior to the expiration of that extension, the Millers, through their representative, executed another consent to extend the time to assess tax, for tax years 1994, 1995 and 1996. *See* Decl., Ex. F., Mem. in Supp. of Mot. for Part. Summ. J. This extension provided that the Millers and the IRS consented and agreed that:

> The amount(s) of any Federal Individual Income Tax due on any return(s) made by or for the above taxpayer(s) for the period(s) ended 12/31/94, 12/31/95, and 12/31/96 may be assessed on or before

---

1. At the June 23, 2003 oral hearing, counsel for the Millers stated that his conversations with the IRS lead he and the Millers to believe that bringing the within adversary proceeding was sufficient to contest the dischargeability of and determine the Millers' tax liabilities.

2. It was adduced at the hearing that at this point, since the deadline to file a petition in tax court has passed, the Millers' only remedy is to pay the tax due and then file a claim for a refund or make an offer in compromise with the IRS.

the 90th (ninetieth) day after: (a) the Internal Revenue Service office considering the case receives Form 872–T . . .; or (c) the Internal Revenue Service mails a notice of deficiency for such period(s); except that if a notice of deficiency is sent to the taxpayer(s), the time for assessing the tax for the period(s) stated in the notice of deficiency will end 60 days after the period during which the making of an assessment is prohibited.

*See id.* The Millers had ninety days from when they received the notice of deficiency, or until June 4, 2002, to contest the proposed deficiencies in the United States Tax Court. *See* Decl., Ex. D., Mem. in Supp. of Mot. for Part. Summ. J. The IRS then had an additional sixty days, or until August 3, 2002, within which to assess the Millers. *See* Mem. in Supp. of Mot. for Part. Summ. J, p. 6.

In the meantime, on June 4, 2002, the Millers commenced the within adversary proceeding by filing a complaint to determine dischargeability of a debt. *See* Compl. Specifically, the Millers requested the court's determination of the dischargeability of the tax debt owed for tax years 1994, 1995 and 1996.[3] With leave, the IRS filed an answer on July 31, 2002.

## ARGUMENTS

The IRS makes two arguments in support of its motion for partial summary judgment and motion for abstention and its reply to the Millers' memorandum in opposition. First, the IRS argues that the Millers' tax liabilities for tax years 1994, 1995 and 1996 are entitled to priority under 11 U.S.C. § 507(a)(8)(A)(iii), as their liabilities were not assessed until after they filed for bankruptcy, and therefore, they are excepted from discharge under 11 U.S.C. § 523(a)(1)(A).

Second, the IRS argues that because the Millers' tax liabilities for tax years 1994, 1995 and 1996 are excepted from discharge, the court should abstain from determining the amount or legality of the tax, fine, or penalty relating to the tax, or any addition to the tax, whether or not previously assessed, whether or not paid, and whether or not contested before or adjudicated by a judicial or administrative tribunal of competent jurisdiction under 11 U.S.C. § 505(a)(1). The IRS argues that the court's authority to determine a tax liability is discretionary, and therefore, the court should consider six factors in analyzing whether it should determine the Millers' tax liabilities. The IRS argues that these six factors are: 1. the complexity of the tax issues to be decided; 2. the need to administer the bankruptcy case in an orderly and efficient manner; 3. the burden on the bankruptcy court's docket; 4. the length of time required for the trial and the decision; 5. the asset and liability structure of the debtor; and 6. the prejudice to the debtor and the potential prejudice to the taxing authority.

Applying the six-factor test, the IRS argues that a determination as to the amount or validity of the Millers' tax liability would have no impact on their bank-

---

**3.** The Millers filed a motion for determination of amount or legality of tax, fine or penalty relating to tax on June 3, 2002 in the main case wherein they objected to the proof of claim filed by the IRS and requested the court determine the amount or legality of the tax. *See* Mot. to Det. Tax Liability and Obj. to Claim. The IRS objected to the Millers' motion on July 31, 2002, arguing, as one of its grounds, that the interest of judicial economy would best be served by consolidating the motion into the within adversary proceeding. *See* Resp. to Debtors' Mot. to Det. Amount or Legality of Tax, Fine or Penalty Relating to Tax. On December 6, 2002, the court consolidated the motion and complaint in the within adversary proceeding. *See* Sched. and Trial Order.

ruptcy proceeding as their schedules show that the estate is bereft of assets from which their secured creditors can expect payment, much less the unsecured claims of the IRS or other unsecured claims in the case.[4] Further, the IRS argues that the issues relating to the determination of tax liability in this case are complex and fact-intensive. The IRS and the Millers dispute whether excess amounts deposited in the Millers' bank accounts are taxable distributions from Mr. Miller's company or whether those amounts were for the repayment of loans made by the Millers to the company or were proceeds of check kiting. The check kiting issue has been more frontally discussed by the parties because Mr. Miller has proceeded through the criminal process. The IRS argues that the court will have to determine whether a debtor-creditor relationship existed and engage in a prolonged audit examination to make that determination. Further, the IRS argues that the Millers would not be prejudiced by the court's abstention as they could pay the liabilities due and file an administrative claim with the IRS for a refund. If the claim for refund is denied, the Millers can then file a lawsuit in district court. In conclusion, the IRS argues that regardless of the court's determination of the Millers' tax liabilities for 1994, 1995 and 1996, those debts are nondischargeable, therefore, no bankruptcy purpose would be served as it is improbable that either the Millers or the IRS will receive any distributions from the Millers' bankruptcy estate.

The Millers argue that the issues in dispute in this case are not so complicated as to warrant the court's abstention.[5] The Millers argue that the discrepancy in reported and unreported income results from Mr. Miller's check kiting and payment of money he had loaned to his business. The Millers argue that the determination of their tax liability can be accomplished through a simple presentation of testimony and exhibits. Further, the Millers argue that if they are not allowed to proceed on this matter in bankruptcy court, they will be unlikely to proceed in tax court as they will unable to afford to hire counsel to pursue the matter.

## ANALYSIS

### I. Standard of Review

The procedure for granting summary judgment is found in Federal Rule of Civil Procedure 56(c), made applicable to this proceeding through Federal Rule of Bankruptcy Procedure 7056, which provides in part that

> [j]udgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c).

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment is not appropriate if a material dispute exists over the facts, "that is, if evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary

---

**4.** This argument of the IRS was bolstered by the trustee's statement during the June 26, 2003 status conference that the Millers' bankruptcy estate is administratively insolvent.

**5.** The Millers do not address the issue of the dischargeability of their tax liabilities in their response, an omission that the IRS noted in its reply.

judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby, Celotex,* and *Matsushita* effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1476 (6th Cir.1989). In responding to a proper motion for summary judgment, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Street,* 886 F.2d at 1479 (quoting *Liberty Lobby,* 477 U.S. at 257, 106 S.Ct. 2505). The nonmoving party must introduce more than a scintilla of evidence to overcome the summary judgment motion. *Street,* 886 F.2d at 1479. It is also not sufficient for the nonmoving party merely to "show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street,* 886 F.2d at 1479. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

This line of cases emphasizes the point that when one party moves for summary judgment, the nonmoving party must take affirmative steps to rebut the application of summary judgment. Courts have stated that:

> Under *Liberty Lobby* and *Celotex,* a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict, and if the opposing party is thereafter unable to demonstrate that he can do so, summary judgment is appropriate. "In other words, the movant could challenge the opposing party to 'put up or shut up' on a critical issue [and] ... if the respondent did not 'put up,' summary judgment was proper."

*Fulson v. City of Columbus,* 801 F.Supp. 1, 4 (S.D.Ohio 1992) (citations omitted) (quoting *Street,* 886 F.2d at 1478).

## II. Dischargeability

### A. Burden of proof

■ The IRS has the burden of proof as to the dischargeability of the Millers' tax liabilities and attendant interest and penalties. *Berzon v. United States (In re Berzon),* 145 B.R. 247, 250 (Bankr.N.D.Ill. 1992). The IRS must prove the nondischargeability of these liabilities under 11 U.S.C. § 523(a)(1)(A) by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

### B. The underlying tax liabilities

■ Section 523(a)(1)(A) excepts from discharge those debts for a tax "of the kind and for the periods specified in section 507(a)(2) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed." 11 U.S.C. § 523(a)(1)(A). Section 507(a)(8)(A)(iii) provides that income taxes that are not assessed before the petition date but are assessable as of that date by agreement or under applicable law after the commence-

ment of the case are entitled to priority and are excepted from discharge. 11 U.S.C. § 507(a)(8)(A)(iii).

The Millers filed their bankruptcy petition on August 29, 2000. They had timely filed their tax returns for tax years 1994, 1995 and 1996, but their liabilities for those tax years had not been assessed as of their petition filing date. While the Millers filed their bankruptcy petition over three years after the due date for the respective tax returns, their liabilities were not assessable until after the filing of their bankruptcy petition pursuant to the consensual extensions entered into between the Millers, their representative and the IRS. Pursuant to the extensions, the IRS had until August 3, 2002 to assess the Millers' tax liabilities for tax years 1994, 1995 and 1996. The IRS assessed the Millers' tax liabilities on August 1, 2002. Therefore, as of the time of filing their bankruptcy petition, the Millers' tax liabilities were still assessable and entitled to priority under § 507(a)(8)(A)(iii) and therefore are nondischargeable under § 523(a)(1)(A).

## C. Interest on the tax liabilities

■ In general, one is liable for the accrual of interest on a tax liability until it is paid in full. 26 U.S.C. § 6601. The IRS included a claim for interest to the petition date on the tax liabilities of the Millers for tax years 1994, 1995 and 1996 on its second amended proof of claim. A claim under 11 U.S.C. § 101(4)(A) is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *In re Larson*, 862 F.2d 112, 119 (7th Cir. 1988) (quoting 11 U.S.C. § 101(4)(A)). This definition of "claim" as a "right to payment" has been construed to include interest. *Id.* The *Larson* court found this

to be consistent with 11 U.S.C. § 502, which governs what is to be allowed as part of a creditor's claim in bankruptcy proceedings: "the court ... shall determine the amount of such claim ... as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that ... such claim is for unmatured interest." *Id.* (quoting 11 U.S.C. § 502(b)(2)). Therefore, prepetition, or matured, interest has "been treated as part of the 'claim,' accorded the same priority status as the underlying liability, and found nondischargeable where the underlying liability is nondischargeable." *Id.; accord McElfresh v. United States (In re McElfresh)*, 1996 WL 628086, *2 (Bankr.S.D.Ohio 1996).

Therefore, because the Millers' underlying tax liabilities for tax years 1994, 1995 and 1996 are accorded priority status under 11 U.S.C. § 507(a)(8)(A)(iii) and are therefore nondischargeable under 11 U.S.C. § 523(a)(1)(A), the interest on those liabilities is likewise accorded priority status under 11 U.S.C. § 507(a)(8)(A)(iii) and found nondischargeable.

## D. Penalties related to the tax liabilities

■ Section 523(a)(7) provides that:
[a] discharge under section 727 ... does not discharge an individual debtor from any debt—
(7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty—
(A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or
(B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition.

11 U.S.C. § 523(a)(7). Exceptions to discharge are narrowly construed against the creditor and in favor of the debtor. *Hopkins v. United States (In re Hopkins)*, 131 B.R. 308, 313 (Bankr.N.D.Tex.1991) (citing *Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915)).

There has been disagreement among the circuits as to whether subsections (A) and (B) should be read disjunctively "to allow the discharge of a tax penalty for a taxable period more than three years before the filing of the bankruptcy petition even if the underlying liability is nondischargeable." *McElfresh*, 1996 WL 628086 at *2 (comparing *Cassidy v. Commissioner*, 814 F.2d 477 (7th Cir.1987) and *In re Carlton*, 19 B.R. 73 (D.N.M.1982) with *In re Roberts*, 906 F.2d 1440 (10th Cir.1990) and *In re Burns*, 887 F.2d 1541 (11th Cir.1989)).[6] The *McElfresh* court was unable to locate a Sixth Circuit Court of Appeals' decision on this issue, *McElfresh*, 1996 WL 628086 at *2; likewise, this court was unable to either.

There is a decision by a court within this circuit that is instructive. The court in that decision cited the "lengthy and careful discussion of 11 U.S.C. § 523(a)(7) and its legislative history" in *Burns v. United States (In re Burns)*, 887 F.2d 1541 (11th Cir.1989) in its analysis of how to interpret the statute. *Henderson v. United States (In re Henderson)*, 137 B.R. 239, 242 (Bankr.E.D.Ky.1991) (citing *Burns v. United States (In re Burns)*, 887 F.2d 1541 (11th Cir.1989)).

We resolve the question of how to read the legislative history in simple fashion: by reading the statute and taking it at face value. Given the several "mute intermediate legislative maneuvers" through which section 523(a)(7) passed before reaching its present form, we conclude that congressional intent cannot be divined from extrinsic sources. The early committee reports do not refer to a comparably worded proposal. The Joint Statements contain inaccuracies and inconsistencies.

*Id.* (quoting *Burns*, 887 F.2d at 1551–52 (footnotes omitted)). Further, the *Henderson* court quoted the holding of the *Burns* court.

While the language of this subsection frames nondischargeable tax penalties as an exception to an exception to an exception, once the triple negative is taken into account the meaning of the provision gains clarity. A tax penalty is discharged if the tax to which it relates is discharged (in the precise terms of the statute, not nondischargeable) or if the transaction or event giving rise to the penalty occurred more than three years prior to the filing of the bankruptcy petition. Since the statute uses the disjunctive, a tax penalty that does not qualify for discharge under one of the two aforementioned circumstances may still qualify under the other.

*Id.* (quoting *Burns*, 887 F.2d at 1544 (footnote omitted)).[7] In summary, the lan-

---

**6.** Interestingly enough, the IRS did not raise the issue of the dischargeability of the penalties in its motion for partial summary judgment. This issue is far from being settled in its favor.

**7.** "[T]his interpretation of the disjunctive in § 523(a)(7) is consistent with the interpretation of the disinjunctive in § 523(a)(1)." *McElfresh*, 1996 WL 628086 at *2.

The disjunctive in § 523(a)(1) means that if a tax liability is dischargeable under one subsection, but not another subsection, the debt is *not* dischargeable. On the other hand, the disjunctive in § 523(a)(7) means that if a tax penalty is dischargeable under one subsection, but not the other subsection, the tax penalty *is* dischargeable. This is not a conundrum. Whereas subsections (A), (B), and (C) of § 523(a)(1) are excep-

guage of the statute "does not compel an irrational result," *In re Roberts*, 906 F.2d 1440, 1444 (10th Cir.1990), and therefore, "must be enforced according to its terms." *Hopkins v. United States (In re Hopkins)*, 131 B.R. 308, 313 (Bankr.N.D.Texas 1991) (citing *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)).

In the within case, the IRS assessed the Millers' penalties or additions to tax pursuant to 26 U.S.C. § 6662(a) for tax years 1994, 1995 and 1996. Under § 523(a)(7)(B), these penalties relate to transactions or events, the filing of the tax returns,[8] that occurred more than three years before the filing of the Millers' bankruptcy petition, and therefore, although the underlying tax liabilities for those years are priority debts and therefore nondischargeable, the penalties related to those liabilities are not accorded the same status. The penalties are dischargeable.

### E. Interest on the penalties related to the tax liabilities

██ Although not specifically addressed in the Bankruptcy Code, courts have found that the interest that attaches to dischargeable penalties that are attributed to nondischargeable underlying tax liabilities is dischargeable. *Fortney v. United States (In re Fortney)*, 1995 WL 606099, *4 (Bankr.S.D.Ga.1995); *Teeslink v. United States (In re Teeslink)*, 165 B.R. 708, 718 (Bankr.S.D.Ga.1994); *In re Frary*, 117 B.R. 541, 549 (Bankr.D.Alaska 1990). Accordingly, the interest on the penalties associated with the Millers' underlying tax liabilities is dischargeable.

### III. Determination of amount of tax liabilities

██ The IRS asks the court to abstain from determining the amount of the Millers' tax liabilities pursuant to 11 U.S.C. § 505(a)(1). Section 505(a)(1) provides in pertinent part:

> [T]he court *may* determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

11 U.S.C. § 505(a)(1) (emphasis added). "This jurisdiction has been held to be discretionary, not mandatory." 15 *Collier on Bankruptcy*, ¶ TX5.10, n.2 (15th ed. rev. 2002) (citing *Queen v. United States*, 148 B.R. 256 (S.D.W.Va.1992)). However, the court's authority to determine the legality of a tax, fine or penalty, or addition to a tax is not unfettered. *In re Continental Airlines, Inc.*, 149 B.R. 76, 84 (D.Del.1993), *aff'd in part, rev'd in part*, 8 F.3d 811 (3d Cir.1993) (Table), *cert. denied*, 510 U.S. 1192, 114 S.Ct. 1297, 127 L.Ed.2d 650 (1994). Section 505(a)(2)(A) expressly precludes a bankruptcy court "from reviewing any determination of a debtor's tax liability where that liability has already been contested or adjudicated." 11 U.S.C. § 505(a)(2)(A); *In re Galvano*, 116 B.R. 367, 372 (Bankr.E.D.N.Y.1990) (a policy of § 505 is to "ensure the finality of determinations of tax liability reached prior to Bankruptcy").

---

tions to discharge and describe "prohibited" conduct, subsections (A) and (B) of § 523(a)(7) are exceptions to exceptions to discharge. *Id.* at *2, n. 2.

**8.** "The due date of the return is the date the 'transaction or event' occurs for which certain penalties are imposed." *Fortney v. United States (In re Fortney)*, 1995 WL 606099, *4 (Bankr.S.D.Ga.1995) (footnote omitted).

 Section 505 was enacted to alleviate two concerns. First, is the necessity of "afford[ing] a forum for the ready determination of the legality or amount of tax claims, which determination, if left to other proceedings, might delay conclusion of the administration of the bankruptcy estate." *In re Diez*, 45 B.R. 137, 139 (Bankr.S.D.Fla.1984). Second, "Congress was concerned with protecting creditors from the dissipation of an estate's assets which could result if creditors were bound by a tax judgment which the debtor, due its ailing financial condition, failed to contest." *In re American Motor Club, Inc.*, 139 B.R. 578, 581 (Bankr.E.D.N.Y.1992). The purposes of § 505 have been analyzed using a six-factor test. *Gossman v. United States (In re Gossman)*, 206 B.R. 264, 266 (Bankr.N.D.Ga.1997). The six-factor test for applying discretionary abstention[9] in the realm of tax liability determinations, developed by the courts, is: 1. the complexity of the tax issues to be decided; 2. the need to administer the bankruptcy case in an orderly and efficient manner; 3. the burden on the bankruptcy court's docket; 4. the length of time required for the trial and the decision; 5. the asset and liability structure of the debtor; and 6. the prejudice to the debtor and the potential prejudice to the taxing authority. *Bldg. Techs. Corp. v. City of Hannibal (In re Bldg. Techs. Corp.)*, 167 B.R. 853, 858 (Bankr.S.D.Ohio 1994) (citing *In re Galvano*, 116 B.R. 367 (Bankr.E.D.N.Y.1990)).

 As some of the six factors in the above test overlap, they will be combined in their application to the present case. First, the issue of whether or not Mr. Miller loaned money to his company for which he was reimbursed or engaged in check kiting (Mr. Miller's representation of the facts) or whether he received profits as a shareholder of his company which should have been declared as income on his tax returns (the version of the IRS) may not appear to be complicated on its face but would require a knowledge of the federal tax code, its definitions, exclusions, limitations and its application, that is beyond the everyday, working knowledge of a bankruptcy court.

> The Tax Court has personnel who are already well-versed in the intricacies of tax law, whereas this [Bankruptcy] Court, while it does consider tax issues, would probably have to do initial research not necessary for the Tax Court to do. As the Court stated in *In re Krupke*, ... "[o]ccasions arise when determination of an issue is best left to a court that decides similar issues regularly."

*In re Huddleston*, 107 B.R. 102, 103 (Bankr.E.D.La.1989) (quoting *In re Krupke*, 57 B.R. 523 (Bankr.W.D.Wis.1987) (citation omitted)). "It is judicially economic for the tax liability questions involved in the instant case to be decided by the court whose job it is to do so." *Huddleston*, 107 B.R. at 103; *see also In the Matter of Beisel*, 195 B.R. 378, 380 (Bankr.S.D.Ohio 1996) (fact-intensive and complicated tax issues regarding alleged improper reclassification by IRS of independent contractors as employees warranted abstention).

Second, the question of this case's burden on the bankruptcy court's docket and

---

**9.** The court is also mindful that its ultimate power of abstention is granted by 28 U.S.C. § 1334(c)(1), which allows a district court, and by virtue of the jurisdiction conferred on a bankruptcy court through 28 U.S.C. § 1334(b) and the general order of reference entered in a district, a bankruptcy court, to abstain "in the interest of justice." 28 U.S.C. § 1334(c)(1).

the length of time needed for its trial and the decision must be examined. This court's docket has been burdened for the last two years as its caseload continues to increase to new yearly records on a monthly basis. The level of filings is not only an historic high but far exceeds any historical precedent. Additionally, while the estimate given by the IRS that a trial of this matter, effectively an audit examination of the Millers' tax liabilities for tax years 1994, 1995 and 1996 could take several days, *see* Mem. in Supp. of Mot. for Part. Summ. J., p. 10 [10], seems excessive, the court does believe that a trial of this sort would run longer than the half-day trials usually scheduled in this court. Additionally, given the matters at issue, as discussed in the previous paragraph, a decision on this matter would be time-consuming. However, having concluded that, these factors of the six-factor test are given less weight by this court by virtue of their lesser importance on the outcome of this case and their impact on the Millers, the IRS and the other creditors.

Third, the need to administer the bankruptcy case in an orderly and efficient manner, as well as the asset and liability structure of the debtor, have to be examined. The trustee has indicated that the Millers' bankruptcy case is administratively insolvent. There will be no money available to distribute to creditors. Courts have abstained from determining tax liabilities in no asset cases citing the fact that no bankruptcy purpose existed for determining the tax liability that outweighed the importance of the uniformity of assessment. *See, e.g., Gossman v. United States (In re Gossman)*, 206 B.R. 264 (Bankr. N.D.Ga.1997); *In the Matter of Beisel*, 195 B.R. 378 (Bankr.S.D.Ohio 1996); *In re Diez*, 45 B.R. 137 (Bankr.S.D.Fla.1984).

Finally, the prejudice to the debtors as well as the potential prejudice to the taxing authority must be analyzed in determining whether the court should abstain from determining the Millers' tax liabilities. The IRS has a procedure for contesting a notice of deficiency. *See* Decl., Ex. D., Mem. in Supp. of Mot. for Part. Summ. J. The Millers were first notified of this procedure in March 2002 and were given 90 days, or by June 4, 2002, to avail themselves of the procedure. *See id.* In response to the court's question as to why the Millers did not avail themselves of the procedure, counsel for the Millers stated at the hearing on June 23, 2003 that he and the Millers, based on information that they sought from the IRS, determined that this bankruptcy proceeding would be sufficient to determine their tax liabilities.

Unfortunately, the filing of the within adversary proceeding did not toll the deadline to petition the tax court. Although the other five factors of the six-factor test militate in favor of the court abstaining from determining the liabilities, this sixth factor overwhelms all other considerations. Should the court abstain, the Millers' only remaining remedy to contest their tax liabilities is to pay the taxes due and then file a claim for a refund with the IRS. If unsuccessful in obtaining that refund, they then have to file a petition in district court. Better that they should fly to the moon under their own power. Abstention is more likely to be an economic death sentence in these circumstances. If

---

10. This is actually page 11 of the memorandum in support of the motion for partial summary judgment and for abstention filed by the IRS, but due to a numbering error, the page is numbered as page 10, and so as not to further complicate things, the court will defer to the misnumbering by the IRS.

unsuccessful in obtaining that refund, they then have to file a petition in district court. This procedure would be greatly prejudicial to the Millers. *See Smith v. United States (In re Smith),* 122 B.R. 130, 133 (Bankr.M.D.Fla.1990) ("[T]he bankruptcy court may not abstain from exercising jurisdiction of a Motion [sic] filed pursuant to § 505 unless the interest of the creditors and the Debtors would be served by abstention."). While given the fact that the administrative insolvency of the Millers' bankruptcy case means that no bankruptcy purpose would be served in determining their tax liabilities, the court cannot ignore the overwhelming prejudice that would result to the Millers upon abstaining.

Based on an analysis of the court's permissive jurisdiction over determinations of tax liabilities under § 505 and its discretion to abstain, the court hereby finds abstention to be inappropriate under the six-factored test analyzed above.

Abstention would be appropriate if this adversary proceeding would be considered to be a timely filing in tax court or if a subsequently filed proceeding in tax court would be legally determined to be timely based upon the events that have transpired. In other words, the IRS may have a *choice* of forum (tax court or bankruptcy court) but the forum other than bankruptcy court must be available to choose. The option of paying an enormous sum to obtain a day in court is no different from denial of a forum for those without the resources to pay.

The IRS is granted until August 15, 2003 to inform the court whether it wishes to attempt to enable or initiate proceedings for a determination of the amount of the Millers' tax liabilities in tax court. If so, the court will grant the motion for abstention at or prior to conclusion of those proceedings. If not, or if such efforts are unavailing (except if by the fault of the Millers), the motion will be denied.

## CONCLUSION

For the foregoing reasons, the motion for partial summary is granted in part and denied in part and the motion for abstention is held in abeyance.

An appropriate order shall enter forthwith.

## ORDER

For the reasons set forth in the accompanying Memorandum Decision, the court **GRANTS IN PART** and **DENIES IN PART** the motion for partial summary judgment of the IRS. Accordingly, the Millers' tax liabilities for tax years 1994, 1995 and 1996 and the interest thereon are hereby found **NONDISCHARGEABLE**, with the amount of the liabilities undetermined at this time. The penalties related to the tax liabilities for tax years 1994, 1995 and 1996 and the interest on the penalties for those tax years are hereby found **DISCHARGEABLE**.

The motion for abstention of the IRS is hereby held in abeyance.

It is so ordered.